**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNA

| | |
|---|---|
| GLEN HAUER, an individual, on behalf of himself, the general public and those similarly situated<br><br>    Plaintiff,<br><br>        v.<br><br>PRICELINE.COM INCORPORATED, a foreign corporation; ALAMO RENT-A-CAR LLC, a foreign limited liability company; VANGUARD CAR RENTAL USA, INC., a foreign corporation; AND DOES 1 THROUGH 50<br><br>    Defendants | CASE NO.  CV-08-2608-JCS<br><br>AMENDED CLASS ACTION COMPLAINT FOR UNFAIR BUSINESS PRACTICES; FALSE ADVERTISING; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; BREACH OF CONTRACT; AND FRAUD, DECEIT AND/OR MISREPRESENTATION<br><br>JURY TRIAL DEMANDED |

Glen Hauer, by and through his counsel, brings this Class Action Complaint against Defendants, on behalf of himself and those similarly situated, for violations of sections 17200 and 17500 *et seq.* of the California Business and Professions Code, violation of the California Consumers Legal Remedies Act, breach of contract and fraud, deceit and/or misrepresentation. The following allegations are based upon information and belief, including the investigation of Plaintiff's counsel, unless stated otherwise.

## INTRODUCTION

1.      This case is about Defendants' systemic practice of accepting prepaid reservations for rental cars but failing to provide the agreed rental car and price, failing to refund customers' money, and failing to reimburse customers for expenses they incur because of Defendants' actions.

## PARTIES

2.      Glen Hauer ("Plaintiff") is, and at all times alleged in this Class Action Complaint was, an individual and a resident of the City of Berkeley in County of Alameda, California.

3.      Defendant Priceline.com Incorporated is a corporation duly incorporated under the laws of the state of Delaware, having its principal place of business in Fairfield, Connecticut.  It is a leading provider of discount internet travel services, including car rentals.

4.      Defendant Alamo Rent-A-Car LLC is a limited liability company established under the laws of the state of Delaware, having its principal place of business in Fort Lauderdale, Florida.  It is a leading provider of car rentals.

5.      Vanguard Car Rental USA, Inc. is a corporation duly incorporated under the laws of the state of Delaware, having its principal place of business in Tulsa, Oklahoma.  It owns and operates Alamo Rent-A-Car LLC and holds the copyright to all information provided on the Alamo website.

6.      The true names and capacities of Defendants sued as Does 1 through 50 inclusive are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names pursuant to section 474 of the California Code of Civil Procedure.  Plaintiff will seek leave of Court to amend this Class Action Complaint when said true names and capacities have been ascertained.  The

1    Parties identified in paragraphs 3 through 6 of this Class Action Complaint are collectively

2    referred to hereafter as "Defendants."  Defendants Priceline.com Incorporated and Does 1-20 are

3    referred to collectively herein as "Priceline."  Defendants Alamo Rent-A-Car LLC; Vanguard Car

4    Rental USA, Inc.; and Does 21-40 are referred to collectively herein as "Alamo."

5            7.      At all times herein mentioned, each of the Defendants was the agent, servant,

6    representative, officer, director, partner or employee of the other Defendants and, in doing the

7    things herein alleged, was acting within the scope and course of his/her/its authority as such

8    agent, servant, representative, officer, director, partner or employee, and with the permission and

9    consent of each Defendant.

10           8.      At all times herein mentioned, Defendants, and each of them, were members of,

11   and engaged in, a joint venture, partnership and common enterprise, and acting within the course

12   and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

13           9.      At all times herein mentioned, the acts and omissions of Defendants, and each of

14   them, concurred and contributed to the various acts and omissions of each and all of the other

15   Defendants in proximately causing the injuries and damages as herein alleged.

16           10.     At all times herein mentioned, Defendants, and each of them, ratified each and

17   every act or omission complained of herein.  At all times herein mentioned, the Defendants, and

18   each of them, aided and abetted the acts and omissions of each and all of the other Defendants in

19   proximately causing the damages, and other injuries, as herein alleged.

20                                   **JURISDICTION AND VENUE**

21           11.     This action is brought by Plaintiff pursuant, *inter alia*, to the California Business

22   and Professions Code, Sections 17200 *et. seq.*  Plaintiff and Defendants are "persons" within the

23   meaning of the California Business and Professions Code, Sections 17201.

24           12.     The injuries, damages and/or harm upon which this action is based, occurred or

25   arose out of activities engaged in by Defendants within, and affecting, the State of California.

26           13.     Defendants have engaged, and continue to engage, in substantial and continuous

27   business practices in the State of California, including in the City of Berkeley and the County of

28   Alameda.

L

1    14.    Plaintiff entered into the contract that is at issue in this dispute while in his

2    residence in Berkeley, California.

3    15.    Accordingly, Plaintiff alleges that jurisdiction and venue are proper in this Court.

4    **SUBSTANTIVE ALLEGATIONS**

5    **Priceline Markets, Advertises and Sells Travel Related Services On The Internet**

6    16.    Priceline is a leading online provider of discount travel services. Priceline allows

7    customers to use its websites at www.priceline.com, www.travelweb.com, www.lowestfare.com,

8    www.rentalcars.com and www.breezenet.com (collectively referred to as "Websites") to make

9    pre-paid reservations for rental cars, hotel rooms, airline tickets and vacation packages.  On the

10   Priceline Websites, customers can "name their own price" or select from previously negotiated

11   rates for rental cars, hotel rooms, airline tickets and vacation packages.

12   17.    Priceline aggressively markets and advertises its rates on hotels, rental cars and

13   airfares as "discount," "low price," "great deals," "value-conscious," "last minute deals,"

14   "weekend deals," and "cheap."  Priceline further states that for its "name your own price" rental

15   car reservations, "If your offer is accepted, we will immediately lock in your reservation and

16   charge your credit card."

17   18.    Priceline advertises that if customers name their own price, their "rental car will be

18   booked through one of the following companies (Alamo, Avis, Budget, Hertz, or National)."

19   Pursuant to the booking services provided by Priceline, and the contractual arrangements between

20   Alamo and Priceline, Alamo is to provide to the rental car services in exchange for the payment

21   collected by Priceline prepaid reservations.  Alamo authorizes Priceline to use Alamo's

22   trademarked logo in advertising rental car reservations and to include the following language on

23   the Priceline website:  "**Alamo and priceline:** Priceline offers great deals to all Alamo locations.

24   Alamo has teamed-up with priceline.com to provide the lowest rates for the most Alamo

25   customers."

26   **Plaintiff Made Pre-Paid Reservations For A Rental Car, But Did Not Receive The**
27   **Promised Car At The Agreed To Price**

28   19.    On or about November 19, 2007, Plaintiff placed a $15.00 per day bid for rental of

L

an economy-sized car in Albuquerque, New Mexico from November 22, 2007 through November 25, 2007.  Plaintiff's pick-up time was specified as 9:30 pm and drop-off time as 11:00 am.  As part of the bid process, Plaintiff was required to input his credit card number to the Priceline website and agree, if his bid was accepted, to pay the associated $45.00 charge (i.e., 3 days at $15.00) as well as additional charges for "Taxes and Fees."  Plaintiff's bid was accepted and his credit card was accordingly charged $75.51 by Priceline.   A true and correct copy of Plaintiff's reservation confirmation is attached hereto as Exhibit A.

20.    On the evening of November 22, 2007, after taking a shuttle from the Albuquerque International Airport terminal provided by the rental car companies, Plaintiff and his wife arrived at the Alamo car rental desk at approximately 9:30 pm.  At that time, he provided to the Alamo agent a copy of Exhibit A. The Alamo agent indicated that Alamo had a record of his reservation but no record of payment.  Additionally, the Alamo agent stated that his reservation record indicated that he had reserved a "full-size" car when, in fact, he had reserved an "economy" car.  Finally, the Alamo agent indicated that Alamo did not have available any "economy cars" or even any "full-size" cars, but rather only a 7-passenger van that would cost $206.10 for Plaintiff's rental dates.   A true and correct copy of the price quotation sheet provided by Alamo to Plaintiff for the van is attached hereto as Exhibit B.

21.    Plaintiff then telephoned Priceline to ask for guidance.  He was required to navigate through the Priceline automated telephone system, and speak to two or three different representatives who were unable to assist him.  Eventually, he was connected to a Priceline representative named Heather.  Heather acknowledged that she could see that the reservation had been paid and that it was for an economy car.  She refused, however, to instruct the Alamo rental car agent that the rental had been prepaid, stating that the department of Priceline that works with Alamo was closed, and that she could not agree that Priceline would pay the higher cost of the rental van.  Plaintiff asked to speak with a supervisor, but Heather stated that in order to do so, Plaintiff would need to hang up and call a different number.

22.    Given Plaintiff's fear of not receiving reimbursement, the late hour (due to the delay of dealing with the Priceline representative) and the weather (a snowstorm was approaching

L

from the North, and he did not feel safe driving a large van), Plaintiff elected not to accept the 7-passenger van.  Because of the delay caused by the dispute, Plaintiff also was unable to take a bus to Santa Fe, as the last bus departed from Albuquerque airport at 10:00 p.m.  (Plaintiff did return to the terminal in an attempt to take the bus, but it had already departed and could not be recalled).  Plaintiff's wife asked a taxi driver if he would take them to Santa Fe, but the driver was reluctant in light of the weather and further estimated the fare at least $100.  Accordingly, Plaintiff could not drive the approximately 75 miles to Santa Fe that evening, but rather he and his wife were forced to stay in Albuquerque at a Wyndham hotel nearby the Airport.  The hotel cost Plaintiff $100.46.

23.    The next morning, Plaintiff's brother (whose wedding was occurring that weekend) was forced to drive from Santa Fe to Albuquerque to retrieve the couple from the Wyndham hotel and then drive them back to Santa Fe.  To return from Santa Fe, Plaintiff's wife took a shuttle and Plaintiff took a commuter bus, at additional expense.

24.    Despite the fact that no car was available for Plaintiff, and that Plaintiff had so informed Priceline, Priceline still charged his credit card $75.51.  Plaintiff disputed the charge with his credit card company, but Priceline challenged the disputed charge, falsely claiming that Plaintiff was a "no show" at the Alamo rental counter, so Plaintiff was forced to pay that amount. A true and correct copy of Priceline's response to the credit card charge dispute is attached hereto as Exhibit C.

25.    Plaintiff's experience was not an isolated incident.  Rather, according to the Alamo representative at the Albuquerque airport, up to 40% of the reservations made through Priceline's Websites for that Alamo location are improperly transferred to Alamo.  Priceline has refused to refund customers' money or reimburse customers' for additional expenses that are incurred due to the fact that the reservation was in error.

26.    For example, one customer posted this statement on an Internet complaint forum:

> I booked a rental car via priceline.com on June 20,2004 from Aug 5 to Aug 10. Pickup was from Avis of Boston airport. Amount was $208.53 which Priceline charged on June 20 itself. On Aug 5 I reached Avis of Boston airport. Avis said that they did not receive

L

payment from priceline and cannot give me a car. I told them that I had already paid priceline and have internet booking printouts. They said it won't help and called up priceline. Priceline customer rep found that they had a glich in their system and was sorry for not sending the payment to Avis yet. She then told me that I should use another credit card of mine to pick up the rental car now and price- line will refund the amount charged by Avis. I used my visa credit card and picked up the rental car. Avis told that my total for 5 days would come to $541.19. I asked them why it was so high. They told that they have special deals for priceline and that they always charge this high when dealing with customers directly and that I should not worry since Priceline will refund anyhow. … I asked priceline to refund $541.19 only, however they refunded my origi- nal $208.53 and said that I upgraded my car so they will not refund $541.19. Hence I ended up paying $578.39 for something which I would have paid only $208.53. This is really crazy.

http://www.ectnews.com/perl/board/mboard.pl/ecttalkback/thread602/602.html, last visited April 22, 2008.

27.    Another customer posted this statement on another Internet complaint forum:

I live in the UK and arranged a hire car with Priceline. com. these are agents for National and Alamo car hire. The cost was $454 guaranteed and covers insurance, taxes and surcharges.

At Charlotte airport they refused to accept the voucher that I pro- duced and insisted I took cover for everything.

Quoted over $1200 from my credit card. I complained but got no- where fast.

* * *

I contacted both customer services and had no joy, be shunted from pillar to post. Neither taking responsibility and neither offering or honoring the original quotation.

http://www.my3cents.com/showReview.cgi?id=29821, last visited April 22, 2008.

## CLASS ALLEGATIONS

28.    Plaintiff brings this action against Defendants on behalf of himself and all others similarly situated, as a class action pursuant to section 382 of the California Code of Civil Procedure and section 1781 of the California Civil Code.  The class that Plaintiff seeks to represent against Priceline is defined as follows:

> All California residents who paid Priceline for a car rental but did not receive the agreed rental car at the agreed price when they attempted to claim their pre-paid reservations.

For purposes of this Class Action Complaint, the phrases "Class" and "Class Members" shall refer collectively to all members of this class, including the named Plaintiff.

29.    Plaintiff further seeks to represent a sublclass against Alamo consisting of the following:

> All Class Members whose car rental was booked through Alamo.

For purposes of this Class Action Complaint, the phrases "Subclass" and "Subclass Members" shall refer collectively to all members of this subclass, including the named Plaintiff.

30.    This action has been brought and may properly be maintained as a class action against the Defendants pursuant to the provisions of California Code of Civil Procedure section 382 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

31.    Numerosity: Plaintiff does not know the exact size of the Class and Subclass, but it is estimated that the Class and Subclass are each composed of more than 5,000 persons. The persons in the Class and Subclass are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

32.    Common Questions Predominate: This action involves common questions of law and fact to the potential class because each Class Member's and Subclass Member's claim derives from the unlawful or unfair charges to their credit card accounts. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class and Subclass to recover. Among the questions of law and fact common to the class and Subclass are:

a)    Whether Defendants fail to transfer car rental reservation information to their partner companies that provide the cars, but nevertheless charge (and refuse to refund) customers for the reservations;

Amended Class Action Complaint

b)     Whether Defendants require Class Members and Subclass Members to pay additional amounts to receive rental vehicles and refuse to reimburse them for additional expenses related to Defendant's failure to provide agreed services;

c)     Whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

d)     Whether Defendants' advertising regarding pre-paid reservations was likely to deceive Class Members and Subclass Members or was unfair;

e)     Whether the alleged conduct by Defendants constitutes a breach of their written contract(s) with Plaintiffs and Class Members and Subclass Members, as posted on the Websites and contained in email confirmations;

f)     The amount of revenues and profits Defendants received and/or the amount of monies or other obligations lost by Class Members and Subclass Members as a result of such wrongdoing;

g)     Whether Class Members and Subclass Members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

h)     Whether Class Members and Subclass Members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief?

33.     Typicality: Plaintiff's claims are typical of the Class and Subclass because he reserved and paid for a rental car from Defendants in the typical retail consumer process but was not provided with the promised rental car. Additionally, Plaintiff was (1) not refunded the amount paid for the rental car that was not provided, (2) not compensated for additional expenses related to Defendants' failure to provide the agreed to rental car, and (3) not compensated for the additional time and hassle related to Defendants' failure to provide the agreed to rental car. Thus, Plaintiff, Class Members and Subclass Members sustained the same injuries and damages arising out of Defendants' conduct in violation of California law. The injuries and damages of each Class Member and Subclass Member were caused directly by Defendants' wrongful conduct in violation of law as alleged.

L

34.    Adequacy: Plaintiff will fairly and adequately protect the interests of all Class Members and Subclass Members because it is in his best interests to prosecute the claims alleged herein to obtain full compensation due to him for the unfair and illegal conduct of which he complains.  Plaintiff also has no interests that conflict with or are antagonistic to the interests of Class Members and Subclass Members.  Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and that of the Class and Subclass.  No conflict of interest exists between Plaintiff, Class Members or and Subclass Members, because all questions of law and fact regarding liability of Defendants are common to Class Members and predominate over any individual issues that may exist, such that by prevailing on his own claim, Plaintiff necessarily will establish Defendants' liability to all Class Members and Subclass Members. Plaintiff and his counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class Members and Subclass Members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class Members and Subclass Members.

35.    Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the Class and Subclass will tend to establish inconsistent standards of conduct for the Defendants and result in the impairment of Class Members' and Subclass Members' rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions world engender.  Furthermore, as the damages suffered by each individual member of the Class and Subclass may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Class and Subclass to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

36. Nexus to California.  The State of California has a special interest in regulating the

L

affairs of corporations that do business here and persons who live here.  Accordingly, there is a substantial nexus between Defendants' unlawful behavior and California.

37.    Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### PLAINTIFF'S FIRST CAUSE OF ACTION
**(Unfair, Unlawful and Deceptive Trade Practices, Business and Professions Code § 17200, et seq.)**

38.    Plaintiff realleges and incorporates by reference the above paragraphs of this Class Action Complaint as if set forth herein.

39.    Within four (4) years preceding the initiation of this litigation, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices in California by engaging in the unfair and illegal business practices outlined above, in particular by (1) charging customers for rental cars but not providing the promised rental cars, (2) refusing to refund the amounts paid for the rental cars that were promised but not provided, and (3) refusing to compensate customers for additional expenses incurred as a result of Defendant's failure to provide the promised rental cars.   Additionally, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices in California by failing to properly inform their rental car partners of the true nature and existence of their reservations and breaching the contracts that they enter into with customers.

40.    Defendants engage in these unfair practices to increase their profits.  Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

41.    The aforementioned practices, which Defendants have used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

42.    Plaintiff seeks, on behalf of those similarly situated, full restitution and disgorgement of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiff, the general public, or those similarly situated by means of

L

the unfair and/or deceptive trade practices complained of herein, plus interest thereon.

43.     Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the unfair trade practices complained of herein.  The acts complained of herein occurred, at least in part, within four (4) years preceding the initiation of this litigation.

44.     Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described trade practices are unfair, unlawful and/or fraudulent and injunctive relief restraining Defendants from engaging in any of such deceptive, unfair and/or unlawful trade practices in the future.   Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that the Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same.  This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

45.     As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

46.     As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

## PLAINTIFF'S SECOND CAUSE OF ACTION
### (False Advertising, Business and Professions Code § 17500, et seq.)

47.     Plaintiff realleges and incorporates by reference the above paragraphs of this Class

L

Action Complaint.

48.     Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the initiation of this litigation, Defendants have made untrue, false, deceptive and or misleading statements in connection with the advertising and marketing of their provision of rental cars throughout the State of California, including in the City of Berkeley and County of Alameda.

49.     Defendants have made representations and statements that its rates on rental cars are "discount," "low price," "great deals," "value-conscious," "last minute deals," "weekend deals" and "cheap."   In fact, Defendants do not provide customers with the marketed and advertised discount rates, deals, etc. but rather force customers to pay inflated, last-minute prices for rental cars that they previously reserved and paid for at "discount rates."

50.     Defendants have made representations that for its "name your own price" rental car reservations, "If your offer is accepted, we will immediately lock in your reservation and charge your credit card."  In fact, Defendants do not "lock in" the reservation but rather charge customers' credit cards even when the reserved car is not available and is not provided.

51.     Defendants engaged in these false, misleading and deceptive advertising and marketing practices to increase the profits.  Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17500, *et seq*. of the California Business and Professions Code.

52.     The aforementioned practices, which Defendants have used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

53.     Plaintiff seeks, on behalf of those similarly situated, full restitution and disgorgement of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiff, the general public, or those similarly situated by means of the unfair and/or deceptive trade practices complained of herein, plus interest thereon.

54.     Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the false, misleading and deceptive advertising and

L

1   marketing practices complained of herein.  The acts complained of herein occurred, at least in

2   part, within three (3) years preceding the initiation of this litigation.

3          55.    Plaintiff and those similarly situated are further entitled to and do seek both a

4   declaration that the above-described practices constitute false, misleading and deceptive

5   advertising, and injunctive relief restraining Defendants from engaging in any such advertising

6   and marketing practices in the future.  Such misconduct by Defendants, unless and until enjoined

7   and restrained by order of this Court, will continue to cause injury in fact to the general public

8   and the loss of money and property in that the Defendants will continue to violate the laws of

9   California, unless specifically ordered to comply with the same.  This expectation of future

10  violations will require current and future customers to repeatedly and continuously seek legal

11  redress in order to recover monies paid to Defendants to which Defendants are not entitled.

12  Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate

13  remedy at law to ensure future compliance with the California Business and Professions Code

14  alleged to have been violated herein.

15         56.    As a direct and proximate result of such actions, Plaintiff and the other members of

16  the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property

17  as a result of such false, deceptive and misleading advertising in an amount which will be proven

18  at trial, but which is in excess of the jurisdictional minimum of this Court.

19         57.    As a direct and proximate result of such actions, Defendants have enjoyed, and

20  continue to enjoy, significant financial gain in an amount which will be proven at trial, but which

21  is in excess of the jurisdictional minimum of this Court.

22                     **PLAINTIFF'S THIRD CAUSE OF ACTION**
23   **(Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)**

24         58.    Plaintiff realleges and incorporates the above paragraphs of this Class Action

25  Complaint as set forth herein.

26         59.    This cause of action is brought pursuant to the California Consumers Legal

27  Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA").

28         60.    Defendants' actions, representations and conduct has violated, and continue to

L

1  violate the CLRA, because they extend to transactions that are intended to result, or which have

2  resulted, in the sale or lease of goods or services to consumers.

3      61.    Plaintiff and other Class Members are "consumers" as that term is defined by the

4  CLRA in California Civil Code § 1761(d).

5      62.    The provision of online travel-related internet booking services, including the

6  provision of rental car reservations, that Plaintiff (and others similarly situated Class Members)

7  purchased from Defendants were "goods" within the meaning of California Civil Code § 1761(a).

8      63.    By engaging in the actions, representations and conduct set forth in this Class

9  Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(5) of the CLRA.

10  Specifically, in violation of California Civil Code §1770(a)(5), Defendants' acts and practices

11  constitute improper representations that the goods or services that they sell have sponsorship,

12  approval, characteristics, ingredients, uses, benefits, or quantities which they do not have.

13     64.    By engaging in the actions, representations and conduct set forth in this Class

14  Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(7) of the CLRA.

15  Specifically, in violation of California Civil Code §1770(a)(7), Defendants' acts and practices

16  constitute improper representations that the goods or services that they sell are of a particular

17  standard, quality, or grade, or that goods are of a particular style or model, when they were not.

18     65.    By engaging in the actions, representations and conduct set forth in this Class

19  Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(9) of the CLRA.

20  Specifically, in violation of California Civil Code §1770(a)(9), Defendants advertise goods or

21  services with intent not to sell them as advertised.

22     66.    By engaging in the actions, representations and conduct set forth in this Class

23  Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(10) of the CLRA.

24  Specifically, in violation of California Civil Code §1770(a)(10), Defendants advertise goods or

25  services with intent not to supply reasonably expectable demand, but do not disclose a limitation

26  of quantity.

27     67.    Plaintiff requests that this Court enjoin Defendants from continuing to employ the

28  unlawful methods, acts and practices alleged herein pursuant to California Civil Code

L

§ 1780(a)(2).  If Defendants are not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the Class will continue to suffer harm.

68.    Pursuant to California Civil Code § 1780, on behalf of similarly situated Class Members, Plaintiff seeks actual damages of at least $1000, punitive damages, an award of $5000 for each Class Member who is a disabled person or senior citizen, and restitution of any ill-gotten gains due to Defendants' acts and practices.

69.    Plaintiff also requests that this Court award him his costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

## PLAINTIFF'S FOURTH CAUSE OF ACTION
### (Breach of Written Contract)

70.    Plaintiff realleges and incorporates by of the above paragraphs of this Class Action Complaint as if set forth herein.

71.    On or about November 19, 2007, Plaintiff entered into a written contract with Defendants for the 3-day rental of an economy automobile in Albuquerque, New Mexico for $75.51 (the "Agreement").

72.    The Agreement specified, *inter alia*, that the amount paid would be (1) non-refundable, non-transferable and non-changeable even if the reservation is not used and (2) if the bid was accepted, Priceline would "immediately lock in [the] reservation and charge [customer's] credit card."  It also specified that an economy car would be made available at the airport in Albuquerque, New Mexico on November 22, 2007 (at 9:30 pm) through November 25, 2007 (at 11:00 am) for a total charge of $75.51, which included $30.51 in "Taxes and Fees."  Pursuant to the terms of the Agreement, Plaintiff paid to Defendants $75.51.

73.    Except for the dates, locations, and amounts, Defendants entered into identical contractual agreements with Class Members.

74.    Plaintiff and Class Members performed all their obligations under the contracts.

75.    On or about November 22, 2007, Plaintiff arrived at the airport in Albuquerque, New Mexico but no economy car was available for the above-mentioned dates for the total charge of $75.51.  Rather, Plaintiff was offered a 7-passenger van for an additional $206.10 including

taxes and fees.

76.    Class Members also were informed, upon attempting to procure their pre-paid retnal cars, that such cars either had not been paid for or were not available, and they were required to pay an additional amount to secure a car or obtain other transportation and/or lose the amount already paid to Defendants.

77.    Accordingly Defendants breached the written contract in which Plaintiff and those similarly situated entered into with Defendants.  Additionally, Defendant breached the Agreement by refusing to refund Plaintiff's (and those similarly situated) payment for the rental cars that were promised but not delivered.

78.    As a direct and proximate result of the breaches set forth herein, Plaintiff, and those similarly situated, have suffered, and continue to suffer, damages in an amount which will be proven at trial, but which are in excess of the jurisdictional minimum of this Court.

## PLAINTIFF'S FIFTH CAUSE OF ACTION
### (Fraud, Deceit and/or Misrepresentation)

79.    Plaintiff realleges and incorporates by reference the above paragraphs of this Class Action Complaint as set forth herein.

80.    On or about November 19, 2007, and on numerous occasions since and prior to that occasion, Defendants made, and continue to make, fraudulent, misrepresentative, false and/or deceptive statements regarding their travel related services.  Specifically, Defendants stated and continue to state that its rates on rental cars are "discount," "low price," "great deals," "value-conscious," "last minute deals," "weekend deals" and "cheap." Defendants also stated that for its "name your own price" rental car reservations, "If your offer is accepted, we will immediately lock in your reservation and charge your credit card." In fact, Defendants do not provide customers with the marketed and advertised discount rates, deals, etc. but rather force customers to pay inflated, last-minute prices for rental cars that they previously reserved and paid for., Defendants also do not "lock in" the reservation but rather charge customers' credit cards even when the reserved car is not available and is not provided.  At the time of making these statements, Defendants have known them to be false or have recklessly disregarded their veracity.

L

81.    Moreover, Defendants employ fraudulent, misrepresentative, false and/or deceptive practices to force customers to pay for rental cars that are not provided at the agreed to price or quality.  Among other things, after refusing to fulfill the terms of their contracts, Defendants then dispute credit card chargebacks by falsely claiming that Class Members were "no-shows."  Accordingly, Defendants employ fraudulent, misrepresentative, false and/or deceptive practices to force customers to pay additional amounts for renting cars at inflated, last-minute rates or accept inferior rental cars at inflated prices or abandon their pre-paid reservations.

82.    These aforementioned fraudulent, deceptive, and/or false statements and omissions concerned material facts that were essential to the analysis undertaken by Plaintiff and those similarly situated as to whether to pay Defendants for rental car reservations.

83.    Plaintiff and those similarly situated would have acted differently had he, and they, not been misled, but instead been informed that (1) their reservations would not properly be transmitted to Defendants' rental car partners, (2) they would not receive the rental car that they reserved and paid for, (3) they would incur additional expenses, (4) they would not receive a refund and (5) they would receive inferior rental cars at either the same or inflated prices.

84.    Defendants had a fiduciary duty to inform Plaintiff and those similarly situated that (1) their reservations would not properly be transmitted to Defendants' rental car partners, (2) they would not receive the rental car that they reserved and paid for, (3) they would incur additional expenses, (4) they would not receive a refund and (5) they would receive inferior rental cars at either the same or inflated prices.

85.    In not informing Plaintiff, and those similarly situated, Defendants breached this duty.  Defendants also gained financially from, and as a result of, their breach.

86.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiff and those similarly situated to alter their position to their detriment.

87.    Plaintiff and those similarly situated justifiably and reasonably relied on Defendants' misrepresentations, and, accordingly, were damaged by the Defendants.

88.    As a direct and proximate result of Defendants' misrepresentations, Plaintiff and those similarly situated have suffered damages in an amount equal to the amount that Defendants

billed them, the inflated price they paid for inferior rental cars and the additional expenses that they incurred.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

    A.    On Causes of Action Numbers 1 and 2 against Priceline and in favor of Plaintiff and the other members of the Class, and on Causes of Action Numbers 1 and 2 against Alamo and in favor of Plaintiff and the other members of the Subclass,

        1.  For the greater of actual or compensatory damages according to proof;

        2.  For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq. and 17500, et seq;

        3.  For injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq and 17500, et seq; and

        4.  For exemplary or statutory damages; see, e.g., Cal. Civil Code §§ 3294 and 3345;

    B.    On Cause of Action Number 3 against Priceline and in favor of Plaintiff and the other members of the Class, and on Cause of Action Number 3 against Alamo and in favor of Plaintiff and the other members of the Subclass:

        1.  For restitution and injunctive relief pursuant to California Civil Code section 1780;

        2.  For actual damages and punitive damages for each Class Member; and

        3.  For statutory damages in the amount of $5000 for each Class Member who is a disabled person or senior citizen;

L

C.  On Cause of Action Number 4 against Priceline and in favor of Plaintiff and the other members of the Class, and on Cause of Action Number 4 against Alamo and in favor of Plaintiff and the other members of the Sub-class:

    1.  For an award of compensatory damages, the amount of which is to be determined at trial;

E.  On Cause of Action Number 5 against Priceline and in favor of Plaintiff and the other members of the Class, and on Cause of Action Number 5 against Alamo and in favor of Plaintiff and the other members of the Sub-class:

    1.  An award of compensatory damages, the amount of which is to be determined at trial; and

    2.  For punitive, exemplary and statutory damages according to proof;

G.  On all causes of action against Priceline and in favor of Plaintiff, Class Members and the general public, and on all causes of action against Alamo and in favor of Plaintiff, Subclass Members and the general public:

    1.  For reasonable attorneys' fees according to proof pursuant to, without limitation, the California Legal Remedies Act and California Code of Civil Procedure § 1021.5;

    2.  For costs of suit incurred; and

    3.  For such further relief as this Court may deem just and proper.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated:  May __, 2008          **GUTRIDE SAFIER LLP**

_____
Adam J. Gutride, Esq.
Seth A. Safier, Esq.
835 Douglass Street
San Francisco, California 94114

Attorneys for Plaintiff



Flights | Hotels | **Cars** | Vacation Packages | Cruises | Tours & Attractions | PriceBreakers | Groups

Sign-In | My Profile | My Trips | Check Your Request | First Time Users | 🛈 Help |

## Your Price Was Accepted

Congratulations Glen Hauer, you got your price of $15.00 per day for your Economy rental car. Your complete rental car itinerary is shown below.

Your Itinerary Number is **110-614-612-61**

**Your purchase is complete.**
**Click here to claim 10% Cash Back**
**on this purchase!**
Click for details
A Priceline.com marketing partner...

 Map/Driving Directions           Print Your Itinerary           Email Itinerary to a Friend

 **Air + Hotel Deals - Book Together and Save!**

- Pick Your Exact Hotel
- Get Round-Trip Airline tickets too
- More than 100 destinations

**Name Your Own Price**

 **Hotel Deals - Get the Guaranteed Best Price.**

- Top-of-the-line hotels
- Guaranteed for late night arrivals
- Save up to 40% over leading sites*

**Name Your Own Price for a Hotel Room**

### Your Rental Car Reservation



Economy (Unlimited Mileage)

**Pick-Up Location:**
Alamo Rent a Car
ALBUQUERQUE ARPT
In-Terminal
3400 University Blvd Se
Albuquerque,NM 87106
1-877-252-6600

**Drop-Off Location:**
Same as above

**Pick-Up Date:** November 22, 2007 - 9:30 PM
**Drop-Off Date:** November 25, 2007 - 11:00 AM
**Driver:** Theresa Fletcher
**Driver's Age:** 48
**Confirmation #:** 119375490COUNT
**Voucher #:** 11061461261
**Priceline Request #:** 110-614-612-61

### Summary of Charges

| | |
|---|---|
| Billing Name: | Glen Hauer |
| Your Offer Price: | $15.00 (per day) |
| Total Rental Days: | 3 days(2 days and 13 1/2 hours) |
| Subtotal: | $45.00 |
| Taxes and Fees: | $30.51 |
| **Total Charges:** | **$75.51** |

Please Note: Prices are in US dollars

**Your purchase is complete.**
**Click here to claim 10% Cash Back on this purchase!**
Click for details
A Priceline.com marketing partner...

### Important information

At your arrival airport, follow signs to Alamo Rent a Car. Please provide your Confirmation Number at the rental counter. Although not required, presenting a copy of this page can simplify the pick-up process. In addition, Alamo Rent a Car will require a major credit card or debit card, a valid driver's license in Theresa Fletcher's Name, and will verify Theresa Fletcher's age at time of rental. Renters with only a debit card will also be required to show proof of round trip airline travel in order to rent the vehicle.

All rentals will take place at the rental counter. Rental cars purchased through priceline can not be cancelled or changed and refunds are not allowed -- even if the reservation is not used. If flight cancellations outside of your control keep you from picking up your car, you will be able to cancel your reservation upon verification.

If you have any questions or require further assistance, please visit our Customer Help Area, or contact Customer Service at 1-800-774-2354 and have your itinerary number **110-614-612-61** and the phone number you provided when you placed your request 510-841-5514 ready when you call.

- Credit Card
- Items Available for Purchase at the Counter

- Driver's License
- Help Center

- Pick/Drop Off Dates and Times
- Contact Alamo Rent a Car: 1-877-252-6600



ADD A HOTEL ROOM     ADD A VACATION

HOME

*All material herein © 1998-2007 priceline.com Incorporated, all rights reserved.*
*PRICELINE, PRICELINE.COM and NAME YOUR OWN PRICE are*
*registered service marks of priceline.com Incorporated.*
*U.S. Patents 5,794,207; 5,897,620; 6,085,169; 6,510,418 and 6,553,346.*

*(CST 2040530-50)*

*ws-58*

investor relations | terms and conditions | privacy policy | adware/spyware policy | travel affiliate program | advertise with us | TV ads | jobs

**Alamo**

| RA # 513351305 | | |
|---|---|---|
| **THERESA FLETCHER** BEWRKLEY, CA 94702 | **RES # 536614716** **CONTRACT ID** **EXT REF #** | **CANCELLED** **QS #** **FT #** |

| **RENTAL LOCATION** ALBUQUERQUE ARPT (888)826 6893 3400 UNIVERSITY BLVD SE SUITE K ALBUQUERQUE, NM 87106 | **RENTAL DATE** 22-NOV-2007 **RENTAL TIME** 09:46 PM | **RETURN LOCATION** ALBUQUERQUE ARPT (888)826 6893 3400 UNIVERSITY BLVD SE SUITE K ALBUQUERQUE, NM 87106 | **RETURN DATE** 22-NOV-2007 **RETURN TIME** 10:06 PM |
|---|---|---|---|

| **RATE RULES AND QUALIFICATIONS    INITIAL X_____** WEEKEND FRI OVERNIGHT Max. rental 5 days Mon at 11:59 PM Sat Must Exclude: Tue | **VEHICLE INFORMATION** RESERVED    Full Size 2/4 Door Car Auto A/C DRIVEN    Full Size 2/4 Door Car Auto A/C CHARGED    Full Size 2/4 Door Car Auto A/C MAKE MODEL COLOR ODOMETER    0 PLATE REG AREA VEHICLE # BAY STALL |
|---|---|

| CHARGES | UNIT | PRICE/UNIT | CURRENT CHARGE |
|---|---|---|---|
| RENTER'S RESPONSIBILITY | | | |
| * TIME & DISTANCE | Day | 51.62 X 3 | 154.85 |
| * TIME & DISTANCE | Hour | 17.21 X | 0.00 |
| OVERSTAY FEES | Day | 10.99 X | 0.00 |
| UNDERSTAY FEES | Day | 15.00 X | 0.00 |
| * EXTRA - TIME & DISTANCE | Day | 71.62 X | 0.00 |
| * EXTRA - TIME & DISTANCE | Hour | 23.87 X | 0.00 |
| * UNLIMITED MILES/KM-TIME & DISTANCE | M/KM | 0.00 X | 0.00 |
| REFUELING SERVICE CHARGE | Gallon | 6.99 X | 0.00 |
| * CUSTOMER FACILITY CHARGE 2.90/DAY | Day | | 8.70 |
| * CONCESSION FEE 9.89 PCT @ 9.89% | | | 15.31 |
| NM LEASED VEHICLE GROSS RECEIPTS @ 5.00% | | | 8.94 |
| NM LEASED VEHICLE SURCHARGE | Day | | 6.00 |
| NM GROSS RECEIPTS TAX 6.88% | | | 12.30 |

**ESTIMATED CHARGES**          206.10  **INITIAL X_____**

**PAYMENTS**
VISA 5486 Auth #

I DECLINE OPTIONAL ALAMO PROTECTION PLUS (APP) AS OF 22-NOV-2007 09:46 PM. X _____

I DECLINE OPTIONAL COLLISION DAMAGE WAIVER AS OF 22-NOV-2007 09:46 PM. X _____

I DECLINE OPTIONAL EXTENDED PROTECTION (EP) AS OF 22-NOV-2007 09:46 PM. X _____

I DECLINE OPTIONAL CAREFREE PERSONAL PROTECTION COVERAGE (PERSPRO) AS OF 22-NOV-2007 09:46 PM. X _____

I DECLINE ALAMO 'S OPTIONAL ROADSIDE SERVICE PLAN AS OF 22-NOV-2007 09:46 PM X _____

'OVERSTAY' IS THE RATE PER DAY OVERSTAY FEE. IF I VIOLATE THE RENTAL AGREEMENT BY FAILING TO RETURN THE CAR AS STATED, I UNDERSTAND THAT THE RENTAL RATE MAY INCREASE AND I WILL BE ASSESSED AN OVERSTAY FEE OF 10.99 PER DAY IN ADDITION TO MY OTHER CHARGES. X _____

'EARLY RETURN' IS RETURNING THE RENTAL VEHICLE PRIOR TO THE SCHEDULED DAY. IF I VIOLATE THE RENTAL AGREEMENT BY FAILING TO RETURN THE CAR AS STATED, I UNDERSTAND THAT, IN ADDITION TO MY OTHER CHARGES, THE RENTAL RATE WILL INCREASE AND I WILL BE ASSESSED AN EARLY RETURN FEE OF 15.00 PER RENTAL. X _____

RENTER'S OWN AUTO INSURANCE POLICY MAY PROVIDE COVERAGE FOR RENTAL CAR DAMAGE/LOSS; LIABILITY; ACCIDENTAL DEATH/DISMEMBERMENT; OR PERSONAL EFFECTS. IF RENTER'S INSURANCE COMPANY CONFIRMS COVERAGE EXISTS, RENTER MAY REQUIRE ALAMO TO SUBMIT CLAIMS DIRECTLY TO THAT COMPANY AS RENTER'S AGENT.

**NO ADDITIONAL DRIVERS ARE AUTHORIZED TO DRIVE THE VEHICLE WITH THE EXCEPTION OF THE DRIVERS LISTED BELOW.**

December 21, 2007

Glen Hauer
REDACTED
Berkeley, CA 94702-2306

04279

Ildoldlullloolddololdlulloollloldol

Account Ending In: 91008

Dear Glen Hauer:

We would like to advise you of the status of your claim on your account from Priceline Car Rental. We suspended the amount of $75.51 and advised you we would contact the merchant on your behalf.

We contacted the merchant and requested credit for an error made by them with the reservation. The merchant denied our request for credit indicating that the car was reserved with the Albuquerque International location from November 22, 2007 to November 25, 2007. The merchant stated that Alamo confirmed that the reservation was available for the dates requested, but the customer did not show. A copy of the terms and conditions of the reservation is enclosed for your review.

Please understand that American Express is not in a position to dictate the merchant's refund policies.

Thank you for choosing American Express. We place enormous emphasis on our ability to provide exceptional service to our customers. We hope you will refer us to your friends and family.

Therefore, we have adjusted your account for the previously suspended amount, which will reflect on an upcoming statement.

If we can be of any further assistance, please call the toll-free telephone number on your statement to speak with a Customer Service Representative. If you are calling from outside the United States, please call collect (336) 393-1111. You can also visit us online at www.americanexpress.com.

Sincerely,

H. Figueroa

H. Figueroa
Customer Service Supervisor
Dispute Reference Number: G946340

REDACTED

The Issuer of this card is American Express Centurion Bank.

3A01-10    FTL    201H    CMS    PV9911A    G946340    TRMUNCS20004001    N    I

[Customer Offer Details]

file://T:\VB Projects\Chbk Support\HTML\297593.htm    12/18/2007

**AMERICAN EXPRESS**

297593

**[Customer Contact Page]**

| OFFER NUMBER | DATE | REASON |
|---|---|---|
| 11061461281 | 11/23/2007 | Partner Charged Customer |



297593

## [Cover Page]

American Express
Type #: SEDIS
Division #: 2060016086
Card Type #: AX
Credit Card Number #: ....1008   REDACTED
Case Amount : 75.51
Date of Sale : 11/20/2007
Case Reason Code #: R175
Member Order #

Merchant Response :
Accept : No
Reason :
Amex:
The Customer is Not due credit. Teh Rental agency was contacted by Priceline on December 01 2007. We were advised by Alamo, that the Relnal Car was Fully available for the Customer . The Customer having a change of plans is Not due credit.

Account Notes Record:

Date 12/01/2007 14:54 17 ET
By amcginnis-ts
Details
Taylor and Kevin from Alamo's customer service has stating that the customer was a no show, and they had his reservation on the date it was purchased for. Customer is not due a refund since he was a no-show, by no fault of the partner

The Customer is Not due credit
The Customer Fully Requested and Purchased the Rental Vehicle for the dates, price, car type and destination that the Customer requested. Priceline fulfilled the Customers order. The Customer is able to view and review all of their selections before submitting the offer to Priceline for the Purchase of the Rental.
The Customer is aware that credit is Not due, whether the Rental was Fully, Partly or Non used, as per the Non Refundable Non Cancelable Terms the Customer agreed to. The Customer is Not due credit. Priceline billed the customer correctly for this purchase which the customer requested

Priceline.com is disputing the cardholder's inquiry. At the time of purchase, the customer agreed that the Rental Car purchase is non-refundable/non-changeable. The attached documentation, which includes an initialed contract page, is being presented in support of our dispute of the inquiry.

About the priceline.com Rental Car offer process

The process starts on our website with the customer providing the details of their trip, including the airport where they would like to reserve the car, their pick-up and drop-off dates and times, the car type they would like and the driver's full name and date of birth. The customer then tells us the price they would like to pay per day (excluding taxes, fees, and surcharges) and guarantees the request with a major credit or debit card. Prior to submitting their offer by clicking the "Buy My Rental Car Now" button - the customer is able to review the summary of their request and make any changes to the information provided. By initiating the contract page, they agree to priceline's terms and conditions and that the information they provided is accurate.

With priceline Rental Cars real-time response, customers usually know if their price was accepted in just a few moments. Customer's also have the option of visiting the "Check Your Request" section of our website or by calling 1-800-priceline. If a customer fails to check the status of an accepted offer within 1 hour of submission, we will send a courtesy email to let the customer know that we have an answer for them and to visit the " Check Your Request" section of the website. Since email is not always reliable, we advise our customers not to rely on it as a method of determining the status of their offer.

If we find a rental car at the customer's price, we'll immediately lock-in the rate and charge the credit or debit card provided for the full amount of the rental including priceline's processing fee and all applicable taxes and industry standard fees and surcharges. Once purchased, all transactions are non-changeable, non-refundable.

Please see attached pages for further documentation supporting our response.

## [Customer Offer Details]

file://T:\VB Projects\Chbk_Support\HTML\297593.htm

12/18/2007