**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 336-6545
Facsimile: (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNA

| | |
|---|---|
| GLEN HAUER, an individual, on behalf of himself, the general public and those similarly situated<br><br>    Plaintiff,<br><br>    v.<br><br>PRICELINE.COM INCORPORATED, a foreign corporation; ALAMO RENT-A-CAR LLC, a foreign limited liability company; VANGUARD CAR RENTAL USA, INC., a foreign corporation; AND DOES 1 THROUGH 50<br><br>    Defendants | CASE NO. CV-08-2608-JSW<br><br>**PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: August 8, 2008<br>Time: 9:00 am<br>Dept: Courtroom 2, 17th Floor<br>Judge: Hon. Jeffrey S. White |

# TABLE OF CONTENTS

I.   NOTICE OF MOTION FOR REMAND ...................................................................................1

II.  STATEMENT OF THE CASE........................................................................................1

III. ARGUMENT .........................................................................................................................6

     A.  Legal Standard .............................................................................................................6

     B.  The Evidence Presented By Defendants In Support Of The Amount In
         Controversy Is Inadequate. ..........................................................................................7

     C.  This Court Should Award Plaintiff's Costs and Fees. ..................................................8

IV.  CONCLUSION .....................................................................................................................9

## I. NOTICE OF MOTION FOR REMAND

On August 8, 2008, at 9:00 a.m., in Courtroom number 2, on the 17th Floor of the United States District Court for the Northern District of California, Plaintiff Glen Hauer will and hereby does move to remand this action to the Superior Court for the State of California, County of Alameda, where it was originally filed.

In addition to an order of remand, Plaintiff seeks an order requiring Defendants to pay fees and expenses that Plaintiff incurred as a result of Defendants' removal of this case. This motion is made pursuant to 28 U.S.C. § 1447(c).

## II. STATEMENT OF THE CASE

Defendant Priceline.com Incorporated ("Pricline") is a leading online provider of discount travel services. (First Amended Complaint ("FAC") § 16.) Priceline allows customers to use its websites to make pre-paid reservations for rental cars, hotel rooms, airline tickets and vacation packages. (Id.) Customers can "Name Their Own Price" or select from previously negotiated rates for rental cars, hotel rooms, airline tickets and vacation packages. (Id.) Priceline aggressively markets and advertises its rates on hotels, rental cars and airfares as "discount," "low price," "great deals," "value-conscious," "last minute deals," "weekend deals," and "cheap." (Id. § 17.) Priceline further states that for its "Name Your Own Price" rental car reservations, "[i]f your offer is accepted, we will immediately lock in your reservation and charge your credit card." (Id.) Priceline advertises that if customers name their own price, their "rental car will be booked through one of the following companies (Alamo, Avis, Budget, Hertz, or National)." (Id. § 18.)

Pursuant to the booking services provided by Priceline, and the contractual arrangements between Defendants Alamo Rent-A-Car LLC and Vanguard Car Rental USA, Inc. (collectively "Alamo") and Priceline, Alamo is to provide rental car services in exchange for the payment collected by Priceline prepaid reservations. (Id.) Alamo authorizes Priceline to use Alamo's trademarked logo in advertising rental car reservations and to include the following language on the Priceline website: "Alamo and priceline: Priceline offers great deals to all Alamo locations.

Alamo has teamed-up with priceline.com to provide the lowest rates for the most Alamo customers." (Id.)

On or about November 19, 2007, Plaintiff placed a $15.00 per day bid for rental of an economy-sized car in Albuquerque, New Mexico from November 22, 2007 through November 25, 2007. (Id. § 19.) Plaintiff's pick-up time was specified as 9:30 pm and drop-off time as 11:00 am. (Id.) As part of the bid process, Plaintiff was required to input his credit card number to the Priceline website and agree, if his bid was accepted, to pay the associated $45.00 charge (*i.e.,* 3 days at $15.00) as well as additional charges for "Taxes and Fees." Plaintiff's bid was accepted and his credit card was charged $75.51 by Priceline. (Id.)

On the evening of November 22, 2007, after taking a shuttle from the Albuquerque International Airport terminal provided by the rental car companies, Plaintiff and his wife arrived at the Alamo car rental desk at approximately 9:30 pm. (Id. § 20.) At that time, he provided to the Alamo agent a copy of his reservation. (Id. § 20; Ex. A.) The Alamo agent indicated that Alamo had a record of his reservation but no record of payment. (Id. § 20.) Additionally, the Alamo agent stated that his reservation record indicated that he had reserved a "full-size" car when, in fact, he had reserved an "economy" car. (Id.) Finally, the Alamo agent indicated that Alamo did not have available any "economy cars" or even any "full-size" cars, but rather only a 7-passenger van that would cost $206.10 for Plaintiff's rental dates. (Id.)

Plaintiff then telephoned Priceline to ask for guidance . (Id. § 21.) He was required to navigate through the Priceline automated telephone system and speak to two or three different representatives who were unable to assist him. (Id.) Eventually, he was connected to a Priceline representative named Heather. (Id.) Heather acknowledged that she could see that the reservation had been paid and that it was for an economy car. (Id.) She refused, however, to instruct the Alamo rental car agent that the rental had been prepaid, stating that the department of Priceline that works with Alamo was closed, and that she could not agree that Priceline would pay the higher cost of the rental van. (Id.) Plaintiff asked to speak with a supervisor, but Heather stated that in order to do so, Plaintiff would need to hang up and call a different number.

Given Plaintiff's fear of not receiving reimbursement, the late hour (due to the delay of

1  dealing with the Priceline representative) and the weather (a snowstorm was approaching from
2  the North, and he did not feel safe driving a large van), Plaintiff elected not to accept the 7-
3  passenger van.  (Id. § 22.)  Because of the delay caused by the dispute, Plaintiff also was unable to
4  take a bus to Santa Fe, as the last bus departed from the Albuquerque airport at 10:00 p.m.
5  (Plaintiff did return to the terminal in an attempt to take the bus, but it had already departed and
6  could not be recalled.)  (Id.)   Plaintiff's wife asked a taxi driver if he would take them to Santa
7  Fe, but the driver was reluctant in light of the weather and further estimated the fare at (a
8  minimum of) $100.  (Id.)  Accordingly, Plaintiff could not drive the approximately 75 miles to
9  Santa Fe that evening, but rather he and his wife were forced to stay in Albuquerque at a
10 Wyndham hotel nearby the Airport.  (Id.)

11       The next morning, Plaintiff's brother (whose wedding was occurring that weekend) was
12 forced to drive from Santa Fe to Albuquerque to retrieve the couple from the Wyndham hotel and
13 then drive them back to Santa Fe.  (Id. § 23.)  To return from Santa Fe, Plaintiff's wife took a
14 shuttle and Plaintiff took a commuter bus, at additional expense.  (Id.)  Despite the fact that no car
15 was available for Plaintiff, and that Plaintiff had so informed Priceline, Priceline still charged his
16 credit card $75.51.  (Id.)  Plaintiff disputed the charge with his credit card company, but Priceline
17 challenged the disputed charge, falsely claiming that Plaintiff was a "no show" at the Alamo
18 rental counter, so Plaintiff was forced to pay that amount. (Id. § 24.)  Plaintiff alleges that this was
19 not an isolated incident but rather was part and parcel of Defendants' unfair and deceptive
20 business practices. (Id. § 25.)

21       Mr. Hauer accordingly brought this action on February 6, 2007, on his own behalf and on
22 behalf of a class of similarly situated individuals, defined as "[a]ll California residents who paid
23 Priceline for a car rental but did not receive the agreed rental car at the agreed price when they
24 attempted to claim their pre-paid reservations."  (Id. § 28.)   He makes five claims for relief, all
25 under California state law:  unfair competition, false advertising, breach of contract, violation of
26 the California Consumers Legal Remedies Act, and fraud, deceit and/or misrepresentation.
27
28

-3-
Plaintiff's Motion to Remand Action to State Court – Case No. CV-08-2608 (JSW)

1  On May 23, 2008, Priceline filed a Notice of Removal to federal court. Defendants Alamo and Vanguard, on April 29, 2008, joined Priceline's notice of removal.  Defendants' sole basis for the removal was the Class Action Fairness Act, 28 U.S. C. §§ 1332(d), 1453 ("CAFA").

In support of removal, Defendants argue under CAFA that the parties are minimally diverse (i.e., that neither Priceline, Vanguard or Alamo has is principle place of business in California) and the amount in controversy, in the aggregate, exceeds five million dollars. *See* 28 U.S.C. §§ 1332(d)(2), 1441(a). But Defendants' sole "evidence" that the amount in controversy exceeds five million dollars is a declaration from one individual, who states that between January 1, 2004, and April 30, 2008, Priceline received over $85,000,000 in revenue from consumers with California billing addresses who booked a rental car through its "Name Your Own Price" service. (Declaration of William Jose In Support of … Notice of Removal, May 23, 2008.)   The problem with the declaration is that it is vastly overinclusive; this case does not concern all California customers who booked a car through the "Name Your Own Price" service.  Rather, it includes only those customers who booked a car *and were not provided* the agreed car at the agreed price.  Defendants have provided no evidence as to the size of this group or the revenue earned from them.

To cover its omission, Priceline seizes on a single allegation from the Complaint that "up to 40% of the reservations made through Priceline's Websites are improperly transferred to Priceline's rental car partners.  In each instance, however, Priceline refuses to refund customers' money or reimburse customers' for any additional expenses that are incurred due to the fact that the reservation was in error." (Complt. § 25.)  Priceline then argues that the "amount in controversy" is 40% of its $85 million in revenue, or $34 million.   (Notice of Removal ("Notice") at 5:12-21.)

Priceline is fully aware of the many faults in its logic, and of the fact that it cannot meet its burden to demonstrate that $5 million is in controversy.  Indeed, immediately following removal, Priceline stated in a letter to Plaintiff that it had searched its records and found that "[s]ituations where a Name Your Own Price customer is told at the reservation desk that the car rental partner does not have the prepaid reservation are extremely rare, occurring to Priceline's knowledge in, at most, fewer than 1/10 of 1% of reservations." (Declaration of Adam Gutride in

Support of Motion to Remand ("Gutride Decl.") Ex. A.) Defendants further stated in the letter that the actual figure is likely no more than 500 transactions in California. (Id.) At 500 transactions, even if the average transaction size is as high as $200—for which there is no evidence—there would be only $10,000 in controversy. Even if 1/10 of 1% of all California customers had been affected, and all of them were entitled to a complete refund, the amount in controversy would be only $85,000 (i.e., 0.001 x $85,000,000). If a nationwide class is certified, the total would still rise only to at most $680,000.[1]

The monetary threshold is not reached even if one includes the possibility of CLRA statutory damages of $5000 for each California resident who was disabled or a senior citizen at the time of the wrongdoing. *See* Civ. Code § 1780(b). Defendants provide no evidence as to how many of the approximately 500 affected persons were disabled or senior citizens. Senior citizens represent approximately 12% of the population, and disabled persons at most 19% of the remaining population. U.S. Census Bureau, Age 2000: Brief, Oct. 2001, available at http://www.census.gov/prod/2001pubs/c2kbr01-12.pdf). U.S. Census Bureau, Americans with Disabilities in 2002, available at http://www.census.gov/population/pop-profile/dynamic/Disability.pdf. Because the transactions occurred on the Internet, it is likely that disabled persons and senior citizens comprise a smaller portion of the class than they do of the total population. But even were the percentages the same, only approximately 125 of the 500 persons would be entitled to statutory damages. Multiplying this number by $5000 per person yields only another $625,000, for a total of $1,305,000.

Nor can Priceline's removal be supported by the cited line in Plaintiff's Complaint. Plaintiff never alleges that 40% of the relevant transactions need to be refunded. Plaintiff actually has no knowledge how many transactions are at issue, which is why he used the language "up to"

---

[1] Plaintiff intends to moves for leave to amend to allege his breach of contract and fraud claims on behalf of a nationwide class. The California economy represents approximately 12.5% of the nationwide economy. *See* M. Benjamin, National Barometer, U.S. News & World Report, Oct. 12, 2003. In light of its strong tourism industry, California likely represents a higher percentage of U.S. car rentals than of the overall U.S. economy, which means that the nationwide total at issue would be less than $680,000.

Plaintiff's Motion to Remand Action to State Court – Case No. CV-08-2608 (JSW)

40%. That figure came from a statement made by the Alamo representative to Plaintiff at the Albuquerque ticket counter. (Declaration of Glen Hauer in Support of Motion for Remand ("Hauer Decl.")) There is no evidence that the Alamo agent knew the scope of transactions for other offices or Alamo or other rental car partners. Plaintiff's First Amended Complaint amends the relevant allegation to clarify that "according to the Alamo representative at the Albuquerque airport, up to 40% of the reservations made through Priceline's Websites for that Alamo location are improperly transferred to Alamo." (FAC § 25.)

Before bringing this motion, Plaintiff met-and-conferred with Defendants about the inappropriateness of removal. (Gutride Decl. ¶ 3.) Plaintiff asked Defendants to stipulate to remand and state that if they did not, he would seek fees and costs in connection with a motion to remand, as provided by 28 U.S.C. § 1447(c). (Id. ¶ 4.) Defendants refused to stipulate to remand. (Id.) Accordingly, Plaintiff files this motion to formally request that this case be remanded to the Superior Court of Alameda County.

**III. ARGUMENT**

**A. Legal Standard**

A civil action in state court may be removed to federal district court if the district court had "original jurisdiction" over the matter. *See* 28 U.S.C. § 1441(a). As amended by CAFA, 28 U.S.C. § 1332(d) vests district courts with "original jurisdiction of any civil action in which, *inter alia*, the amount in controversy exceeds the sum or value of $ 5,000,000, exclusive of interest and costs," and in which the aggregate number of proposed plaintiffs is 100 or greater, and any member of the plaintiff class is a citizen of a state different from any defendant. *See* 28 U.S.C. § 1332(d). All doubts and ambiguities are resolved against removal and in favor of remand. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941).

The Ninth Circuit recently affirmed that "under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) (per curiam); *see also Serrano v. 180 Connect, Inc.*, 2007 U.S. App. LEXIS 3818, 2007 WL 601984 (9th Cir. Feb. 22, 2007) (proponent of federal jurisdiction bears burden of proving jurisdiction); *accord Morgan v. Gay*, 471 F.3d 469,

472-73 (3d Cir. 2006) (under CAFA, party seeking removal bears burden of establishing requisite amount in controversy; *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328-29 (11th Cir. 2006) (CAFA does not alter traditional rule that proponent of federal jurisdiction bears burden of proving amount in controversy); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005) ( "none [of CAFA's language] is even arguably relevant" to question of burden shifting). The Ninth Circuit also affirmed that where, like here, when the plaintiff fails to plead a specific amount of damages, the defendant seeking removal "must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *Abrego Abrego*, 443 F.3d at 683 *citing Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Defendants fail to meet that burden.

### B. The Evidence Presented By Defendants In Support Of The Amount In Controversy Is Inadequate.

Priceline has not only failed to meet its burden to demonstrate the existence of federal jurisdiction, but has admitted that far less than $5 million is in controversy. At best, Defendants' "evidence"—even drawing every reasonable assumption in their favor—shows that if Plaintiff succeeds on all his claims, he and the class will recover no more than $1,305,000. Since the Court is required to draw assumptions *against* the exercise of federal jurisdiction, the actual amount proven by Defendants to be "in controversy" is far less.

Moreover, "[i]n measuring the amount in controversy, a court must assume that the allegations in the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). However, "when considering a motion to remand, the district court…construes all factual ambiguities in favor of the plaintiff." *City of Ann Arbor Emples. Ret. Sys. v. Gecht*, 2007 U.S. Dist. LEXIS 21928 (N.D. Cal. 2007) (internal citations omitted). And "in any removal action, doubt arising from merely inartful, ambiguous, or technically defective pleadings should be resolved in favor of remand." *Lewis v Time, Inc*, 83 F.R.D. 455, 460 (E.D. Cal. 1979).

In this instance, Defendants' basis for removal is wholly predicated on their misconstruction of a single allegation in a 20-page complaint—that "up to 40% of the reservations made

through Priceline's Websites are improperly transferred to Priceline's rental car partners." (Complt. § 25.) As discussed above, Plaintiff has no knowledge how many transactions are at issue, which is why he used the language "up to" 40%. Moreover, that figure came from a statement made by the Alamo representative to Plaintiff at the Albuquerque ticket counter about the transactions in her location, a fact clarified in the Hauer Declaration. At best, the allegation is inartful or ambiguous.

Accordingly, it is an insufficient foundation for Defendants' removal.

**C. This Court Should Award Plaintiff's Costs and Fees.**

Plaintiff is entitled to payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal under 28 U.S.C. § 1447(c). *See Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 446 (9th Cir. 1992). The purpose of an award of fees and costs is not to punish the removing party but instead to reimburse the other party for costs incurred as a result of the unnecessary removal, *id.* at 447, and to discourage improper removal. In so doing, the fee shifting provision fulfils the same purpose as the former requirement—now eliminated—that the removing party post a "removal bond." *Dead Kennedys v. Biafra*, 46 F.Supp.2d 1028, 1030 (N.D. Cal. 1999).

Even if the Court finds the removal was "fairly supportable," an award of costs and fees is appropriate when the removal was "wrong as a matter of law." *Balcorta v. Twentieth Century Fox Film Corp.*, 208 F.3d 1102, 1106, n.2 (9th Cir. 2000). Bad faith need not be shown. *Id.* at 1106, n.2; Moore, 981 F.2d at 446.

Here, the removal was wrong as a matter of law. Indeed, Defendants knew, or should have known, that removal was not supportable, particularly after discussing the issue with Plaintiff's counsel. When confronted with the relevant law and a detailed explanation of Plaintiff's claims, Defendants still refused to remand. Defendants' insistence on removal seems to be motivated primarily by a desire to delay or obstruct this case. Plaintiffs should accordingly be awarded fees and costs incurred in connection with the removal.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court (1) remand this case to the Superior Court of the State of California, County of Alameda; and (2) order Defendants to pay Plaintiff's costs, including attorneys' fees.

Dated: June 23, 2008

**GUTRIDE SAFIER LLP**

*/s/ Seth A. Safier*
Adam J. Gutride, Esq.
Seth A. Safier, Esq.
835 Douglass Street
San Francisco, California 94114

Attorneys for Plaintiff

# PROOF OF SERVICE

I, Seth A. Safier, declare:

My business address is 835 Douglass Street, San Francisco, California. I am employed in the County of San Francisco, where this mailing occurs. I am over the age of 18 years and not a party to the within cause.

On June 23, 2008, I served the following documents:

**PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**DECLARATION OF ADAM GUTRIDE IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT**

**DECLARATION OF GLEN HAUER IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT**

on the following person(s) in this action by placing a true copy thereof as follows:

| | |
|---|---|
| FOLGER LEVIN & KAHN LLP<br>Gregory D. Call (gcall@flk.com)<br>Jiyun Cameron Lee (jlee@flk.com)<br>Trina D. McAlister (tmcalister@flk.com)<br>Embarcadero Center West<br>275 Battery Street, 23rd Floor<br>San Francisco, CA 94111 | SEDGWICK, DETERT, MORAN & ARNOLD LLP<br>Jacqueline Jauregui (jacqueline.jauregui@sdma.com)<br>Marina L. Whelan (marina.whelan@sdma.com)<br>801 South Figueroa Street, 19th Floor<br>Los Angeles, CA 90017 |

[x]    BY ELECTRONIC MAIL. I caused said documents to be transmitted by electronic mail to the email address indicated after the address(es) via ECF.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this document was executed on June 23, 2008, at San Francisco, California.

_____
Seth A. Safier, Esq.