1  SEDGWICK, DETERT, MORAN & ARNOLD LLP
   JACQUELINE M. JAUREGUI  Bar No. 095289
2  jacqueline.jauregui@sdma.com
   MARINA L. WHELAN  Bar No. 251087
3  marina.whelan@sdma.com
   801 South Figueroa Street, 19th Floor
4  Los Angeles, California 90017-5556
   Telephone: (213) 426-6900
5  Facsimile: (213) 426-6921

6  SEDGWICK, DETERT, MORAN & ARNOLD LLP
   MATTHEW A. FISCHER  (No. 191451)
7  matthew.fischer@sdma.com
   One Market Plaza
8  Steuart Tower, 8th Floor
   San Francisco, CA  94105
9  Telephone: (415) 781-7900
   Facsimile: (415) 781-2635

10
   Attorneys for Defendant
11 PRICELINE.COM, INC.

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14

15 GLEN HAUER, an individual, on behalf of     CASE NO.    CV 08-02608 JSW
16 himself, the general public, and those
   similarly situated,                          The Honorable Jeffrey S. White
17
                         Plaintiff,
18
        v.                                      **DEFENDANT PRICELINE.COM,**
19                                              **INCORPORATED'S MEMORANDUM OF**
   PRICELINE.COM INCORPORATED, a               **POINTS AND AUTHORITIES IN**
20 foreign corporation; ALAMO RENT-A-          **OPPOSITION TO PLAINTIFF'S MOTION**
   CAR LLC, a foreign limited liability         **FOR REMAND**
21 company; VANGUARD CAR RENTAL
   USA, INC., a foreign corporation; and
22 DOES 1 through 50
                                                HEARING DATE:   August 8, 2008
23                       Defendant.             TIME:           9:00 a.m.
                                                COURTROOM:      2
24
                                                Amended Class Action Complaint Filed:
25                                              June 9, 2008

26

27 //

28 //

# TABLE OF CONTENTS

Page

I.  INTRODUCTION................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................ 2

    A.  Facts As Pleaded In The Original Complaint ......................................... 2

    B.  Priceline's Removal ............................................................................... 3

    C.  Priceline's Response To The Consumer Legal Remedies Act Claim
        For Relief ................................................................................................ 4

    D.  Plaintiff's Amended Complaint ............................................................. 5

III. ARGUMENT..................................................................................................... 5

    A.  The Jurisdictional Elements Of CAFA ................................................. 5

    B.  Federal Courts Should Interpret CAFA Expansively And Resolve Any
        Doubts In Favor Of Exercising Jurisdiction. ......................................... 5

    C.  Plaintiff Cannot Force A Remand By Attempting to Manipulate The
        Amount In Controversy.......................................................................... 7

        1.  **The Amount In Controversy Must Be Determined From
            The Initial Complaint And At The Time Of Removal**........................ 7

        2.  **The Allegations In Plaintiff's Complaint Establish That
            The Amount In Controversy Exceeds $5 Million**.................................. 8

        3.  **Plaintiff Offers No Evidence To Rebut Defendant's
            Evidence Supporting The Amount In Controversy**.............................. 10

        4.  **Plaintiff Seeks A Wide Variety Of Other Relief And
            Damages That Further Support That The Amount In
            Controversy Pled Exceeds $5 Million** .................................................. 11

    D.  In The Event Of Remand, The Court Should Deny Plaintiff's Request
        For Costs And Attorney's Fees............................................................... 13

IV. CONCLUSION.................................................................................................. 14

# TABLE OF AUTHORITIES

Page

## Cases

*Ajimatanrareje v. Metropolitan Life Ins. Co.,*
1999 WL 319216 (N.D. Cal. 1999) ................................................................................. 9

*Allen v. R & H Oil & Gas Co.,*
63 F.3d 1326 (5th Cir. 1995) ......................................................................................... 9

*Angus v. Shiley Inc.,* 989 F.2d 142 (3rd Cir. 1993) ........................................................... 8

*Anthony v. Security Pac. Fin'l Services, Inc.,* 75 F.3d 311 7th Cir. 1996) ..................... 12

*BEM I. L.L.C. v. Anthropologie, Inc.,* 301 F.3d 548 (7th Cir. 2002.) ........................... 12

*Bush v. Cheaptickets, Inc.,*
425 F.3d 683 (9th Cir. 2005) ......................................................................................... 5

*Chavis v. Fid. Warranty Servs,* 415 F.Supp.2d 620 (S.D. S.C. 2006) ............................. 6

*Conrad Associates v. Hartford Accident & Indemnity Co.,*
994 F. Supp. 1196 (N.D. Cal. 1998) ............................................................................. 9

*Faulkner v. Astro-Med, Inc.,*
1999 WL 820198 (N.D. Cal. 1999) ............................................................................... 9

*Galt G/S v. JSS Scandinavia,*
142 F.3d 1150 (9th Cir. 1998) ..................................................................................... 12

*Gardner v. UICI,*
508 F.3d 559 (9th Cir. 2007) ................................................................................ 13, 14

*Hill v. Blind Indus. & Servs.,* 179 F.3d 754 (9th Cir. 1999.) ........................................... 8

*In re Textainer Partnership Securities Litigation,*
2005 WL 1791559 (N.D. Cal. 2005) ............................................................................. 6

*Kearns v. Ford Motor Co.,*
2005 WL 3967998 (C.D.Cal. 2005) .............................................................................. 6

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,*
199 F. Supp. 2d 993 (C.D. Cal. 2002) ........................................................... 7, 9, 10, 11

*Korn v. Polo Ralph Lauren Corp.,*
536 F.Supp.2d 1199 (E.D.Cal. 2008) ............................................................................ 9

*Martin v. Franklin Capital Corp.,*
546 U.S. 132, 126 S. Ct. 704 (2005) ........................................................................... 13

*Matheson v. Progressive Specialty Ins. Co.,* 319 F.3d 1089 (9th Cir. 2003) ............... 11

i

*Meritcare, Inc. v. St. Paul Mercury Ins. Co.* 166 F.3d 214 (3rd Cir. 1999) ................................... 7

*Munro v. Golden Rule Ins. Co.*, 393 F.3d 720 (7th Cir. 2004) ..................................................... 13

*Northeast Clackamas County Electric Co-op., Inc. v. Continental Casualty Co.*,
    221 F.2d 329 (9th Cir. 1955) ...................................................................................................... 8

*Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*,
    802 F.2d 362 (9th Cir. 1986) ...................................................................................................... 7

*Progressive West Ins. Co. v. Preciado*,
    479 F.3d 1014 (9th Cir. 2007) .................................................................................................... 5

*Richmond v. Allstate Ins. Co.*,
    897 F. Supp. 447 (S.D. Cal. 1995 ............................................................................................... 7

*Rodgers v. Cent. Locating Serv.*, 412 F. Supp. 2d 1171 (D. Wash. 2006) ................................... 11

*Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868 (6th Cir. 2000)..................................................... 7

*Sanchez v. Monumental Life Ins. Co.*,
    102 F.3d 398 (9th Cir. 1996) ...................................................................................................... 9

*Shaw v. Dow Brands, Inc.*, 994 F.2d 364 (7th Cir. 1993)............................................................... 8

*Singer v. State Farm Mutual Auto. Ins. Co.*,
    116 F.3d 373 (9th Cir. 1997) ...................................................................................................... 8

*Smith v. General Accident Ins. Co*, 337 F.3d 888 (7th Cir. 2003)............................................... 12

*Sparta Surgical v. Nat. Ass'n of Securities Dealers*,
    159 F.3d 1209 (9th Cir. 1998) ................................................................................................ 1, 7

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).............................................. 12

*Waitt v. Merck & Co., Inc.*,
    2005 WL 1799740 (W.D. Wash. 2005)....................................................................................... 6

*Watson v. Blankenship*, 20 F.3d 383 (10th Cir. 1994) ................................................................. 12

*Williams v. Costco Wholesale*,
    471 F.3d 975 (9th Cir. 2006) ................................................................................................... 1, 7

*Wilson v. Union Sec. Life Ins. Co.*, 250 F. Supp. 2d 1260 D. Idaho 2003).................................... 11

*Yeroushalmi v. Blockbuster, Inc.*,
    2005 WL 2083008  (C.D. Cal. 2005)....................................................................................... 5, 6

## **Statutes**

28 United States Code § 1332................................................................................................... 5, 7

California Civil Code Section 1750................................................................................................ 4

California Civil Code Section 1782........................................................................................... 4, 5

1

**I.**

2

**INTRODUCTION**

3      Plaintiff's motion to remand this putative class action proceeds as though a plaintiff who

4   has pleaded a case meeting the federal jurisdictional requirements can undo subject matter

5   jurisdiction with an amended complaint, calculated to change the amount in controversy. This is

6   not the law. To the contrary, Plaintiff's post removal amendment "is of no moment" to this

7   Court's analysis of this motion to remand. *Sparta Surgical v. Nat. Ass'n of Securities Dealers*,

8   159 F.3d 1209, 1213 (9th Cir. 1998). Rather, the Ninth Circuit has "long held that post-removal

9   amendments cannot affect whether a case is removable." *Williams v. Costco Wholesale*, 471

10   F.3d 975, 976 (9th Cir. 2006). Thus, the allegations of Plaintiff's Original Complaint govern the

11   analysis here.

12      The Original Complaint, reasonably read, alleges a case within the jurisdictional

13   requirements of the Class Action Fairness Act (CAFA). The Original Complaint plainly satisfies

14   CAFA's minimal diversity and numerosity requirements. This motion turns on whether the

15   allegations of the Original Complaint also satisfy the CAFA requirement of an aggregated

16   $5,000,000 amount in controversy, when those allegations are read in conjunction with

17   Priceline's Notice of Removal. They do.

18      Plaintiff Hauer alleges that he booked and paid for a rental car using Priceline's website,

19   but when he arrived to pick it up, he was told there was no record of his payment. He further

20   alleges that he was refused a refund, and offered a car which would cost almost three times what

21   he had already paid, and Priceline would not agree to pay the additional amount.

22      Plaintiff goes on to allege:

23      Plaintiff's experience was not an isolated incident. Rather, up to 40% of the
        reservations made through Priceline's websites are improperly transferred to
24      Priceline's rental car partners. In each instance, however, Priceline refuses to
        refund customers' money ...." (O.C. 15:20-24).
25

26      A reasonable reading of the Original Complaint is that Plaintiff contends as many as forty

27   percent of Priceline's internet car rental reservations, just like Plaintiff's reservation, do not

28   transfer correctly to the rental car companies which fulfill them, so Priceline customers either are

-1-

1  forced to pay twice or offered more expensive cars than they booked. While Priceline believed

2  that this allegation was plucked from thin air, nonetheless Plaintiff made the allegation, doubtless

3  to support eventual class treatment of his claims.

4      With its Notice of Removal, Priceline provided a swan declaration that its revenue from

5  California rental car bookings during the four year class period alleged exceeded $85,000,000.

6  Forty percent of those bookings – which allegedly were "improperly transferred" but Priceline

7  nonetheless "refuse[d] to refund customers money" – amounts to $34,000,000, well in excess of

8  CAFA's jurisdictional minimum.

9      Plaintiff has beaten a hasty retreat from this baseless allegation, now asserting in the First

10  Amended Complaint that the 40 percent failure to transfer is confined to one "rental car partner"

11  – Defendant Alamo – and one location – the Albuquerque Airport. However, this retreat is down

12  a well-trodden path, which the Ninth Circuit has long rejected as a way out of federal court. Post

13  removal amendments do not affect the propriety of a removal. Rather, subject matter jurisdiction

14  attaches at the time of removal, and cannot be destroyed by an amendment eliminating the

15  allegations which created it.

16                                      **II.**

17                          **FACTUAL BACKGROUND**

18  **A.    Facts As Pleaded In The Original Complaint**

19      Plaintiff, a California resident, has sued Defendant Priceline.com, a Delaware

20  corporation, with its principal place of business in Connecticut. O.C. at 1:13-16.[1] Plaintiff seeks

21  to represent a putative class of California residents "who paid Priceline for a car rental but did

22  not receive the agreed car rental at the agreed price when they attempted to claim their prepaid

23  reservations." O.C. at 7:1-3. Plaintiff alleges there are more than 5,000 similarly situated

24  customers. O.C. at 7:14-16.

25      In addition to his allegation that "up to 40% of the reservations made through Priceline's

26

27      [1]  Matters of form: Citations to the original complaint will be cited as "O.C. at page
28         number: line numbers" The First Amended Complaint will be cited as "F.A.C. at page
           number: line numbers."

---

-2-

1 | websites are improperly transferred to Priceline's rental car partners", Plaintiff alleges his
2 | experience is typical, and that a class action is proper because of certain questions purportedly
3 | common to the putative class. These common questions include, "whether defendants fail to
4 | transfer car rental reservation information to their partner companies that provide the cars, but
5 | nevertheless charge (and refuse to refund) customers for the reservations." O.C. at 7:25-28.
6 | Plaintiff Hauer alleges that his claims are typical because, "… he reserved and paid for a rental
7 | car from defendants in the typical retail consumer process but was not provided with the
8 | promised rental car at the agreed to price. Additionally, plaintiff was (1) not refunded the
9 | amount paid for the rental car that was not provided, (2) not compensated for additional expenses
10 | related to defendants' failure to provide the agreed to rental car, (3) not compensated for the
11 | additional time and hassle related to defendants' failure to provide the rental car. Thus, plaintiff,
12 | class members and subclass members sustain the same injuries and damages arising out of
13 | defendants' conduct in violation of California law." O.C. at 8:19-26.

14 | These allegations of commonality and typicality must be assessed in light of Plaintiff
15 | Hauer's allegations concerning his individual transaction. He describes making a prepaid offer,
16 | which was accepted, for a rental to be picked up in Albuquerque, New Mexico. O.C. at 3:28-4:6.
17 | The reservation apparently was through the Alamo Car Rental Company, since Plaintiff alleges
18 | he approached the Alamo desk at the Albuquerque Airport and was told that Alamo had no
19 | record of his payment and had a reservation for the wrong car. O.C. at 4:8-13. The agent offered
20 | an alternate car to Plaintiff, at almost triple the cost he had already paid to Priceline. O.C. at
21 | 8:14-16.

22 | Plaintiff alleges he contacted Priceline, which confirmed that the reservation in fact was
23 | prepaid, but refused to instruct the Alamo car rental agent that the rental was prepaid. O.C. at
24 | 4:21-23. Plaintiff further alleges that the Priceline agent with whom he spoke refused to agree to
25 | pay for the higher cost vehicle Plaintiff had been offered. O.C. at 4:23-25. Plaintiff then made
26 | other arrangements. O.C. at 4:27-5:9.

27 | **B.    Priceline's Removal**
28 | Plaintiff served the Complaint on Priceline's Agent for Service of Process on April 24,

-3-

1  2008. Priceline timely filed its Notice of Removal on May 23, 2008. With its Notice of

2  Removal, Priceline filed the Declaration of William Jose, its Vice President, Rental Cars,

3  attesting to the revenue Priceline received from consumers with California billing addresses who

4  booked a rental car within the class period using Priceline's Name Your Own Price® service.

5  That revenue totaled $85,000,000. Forty percent of that revenue is $34,000,000, well in excess

6  of the CAFA jurisdictional minimum.

7  **C.    Priceline's Response To The Consumer Legal Remedies Act Claim For Relief**

8           The third cause of action in Plaintiff's original complaint pleaded violation of the

9  California Consumer Legal Remedies Act, California Civil Code Sections 1750-1784 (CLRA).

10  The CLRA provides a process for a "cure" of any purported CLRA violation by a defendant

11  which has either received a preliminary notice and demand or, under certain conditions, service

12  of suit. Cal. Civ. Code § 1782(c)(d). Priceline, having reviewed the allegations of Plaintiff's

13  complaint and its records of his transaction, contacted Mr. Hauer's counsel within 30 days to

14  notify his counsel that it was in the process of taking the steps required to cure under Civil Code

15  Section 1782(c). The cure requires several steps, including identification of consumers who are

16  similarly situated, and, within a reasonable time, offer of an appropriate remedy to them.

17  Plaintiff, in seeking remand, has placed Priceline's communications pursuant to Civil Code

18  Section 1782 before the Court. Under Civil Code Section 1782(e) they are inadmissible, at least

19  under California state law, unless Priceline chooses to introduce them any evidence of its

20  compliance with Civil Code Section 1782.

21           In its correspondence, Priceline pointed out to Plaintiff that its records demonstrate that

22  the number of customers who contacted it with claims that they were required to pay for cars

23  despite prepaid reservations, or claims that more money was demanded from them despite their

24  prepaid reservations, was very small in comparison to Plaintiff's 40 percent allegation. This

25  information was significant to the "cure" process because Priceline is required to identify

26  similarly situated customers in order to effect the statutory cure. Obviously, the information in

27  Priceline's correspondence, while given in good faith and believed to be correct, is not a part of

28  the Original Complaint, nor the notice of removal. Thus, it does not govern the analysis here.

**D.    Plaintiff's Amended Complaint**

After receipt of Priceline's Notice of Removal and letter pursuant to Civil Code Section 1782(c), Plaintiff amended his complaint. He reversed field on his forty percent failure to transfer claim, confining the new claim to forty percent of Alamo bookings at the Albuquerque airport, in an obvious effort to evade jurisdiction under CAFA. F.A.C. at 5:20-24.

**III.**

**ARGUMENT**

**A.    The Jurisdictional Elements Of CAFA**

The Class Action Fairness Act (CAFA) grants original jurisdiction to federal courts in class actions where: (1) the aggregate amount in controversy exceeds $5,000,000; (2) any "member of a class of plaintiffs is a citizen of a State different from any defendant"; and (3) the number of class members is 100 or more. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B). Complete diversity is unnecessary; "minimal diversity" will suffice. *Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 684 (9th Cir. 2005). Here both the numerosity and the minimal diversity requirements are plainly satisfied. Plaintiff only challenges Priceline's showing on CAFA's first element, the amount in controversy.

**B.    Federal Courts Should Interpret CAFA Expansively And Resolve Any Doubts In Favor Of Exercising Jurisdiction.**

Congress enacted CAFA in order to "significantly expand[] federal subject matter and removal jurisdiction over class actions" and to "make it easier for litigants to remove class actions to federal district courts." *Progressive West Ins. Co. v. Preciado*, 479 F.3d 1014, 1015 (9th Cir. 2007). Jurisdiction under CAFA is construed broadly and favors keeping the action in federal court. As the Senate Judiciary Committee noted, "the Committee intends this subsection to be interpreted *expansively*. . . if a federal court is uncertain . . . *the court should err in favor of exercising jurisdiction over the case. . . ."* *Yeroushalmi v. Blockbuster, Inc.*, 2005 WL 2083008 at *3 (CD. Cal. 2005) (emphasis added) (Congress expressed "a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant"), *quoting*

-5-

1    S. Rep. No. 109-14 at 42 (2005), 2005 U.S.C.C.A.N. 3, 40; *see also, Chavis v. Fid. Warranty*
2    *Servs,* 415 F.Supp.2d 620, 625-626 (S.D. S.C. 2006) (same).  That is true "regardless of the type
3    of relief sought (*e.g.,* damages, injunctive relief, or declaratory relief) . . . ." *Ibid.* CAFA altered
4    the standard for removal, and courts should no longer construe the removal statute strictly against
5    the exercise of removal jurisdiction. *In re Textainer Partnership Securities Litigation,* 2005 WL
6    1791559 at *3 (N.D. Cal. 2005) ("While courts ordinarily are required to 'strictly construe [a]
7    removal statute against removal jurisdiction,' [citation] the legislative history of CAFA instructs
8    that CAFA's jurisdictional provisions 'should be read broadly, with a strong preference that
9    interstate class actions should be heard in a Federal court if removed by any defendant.'").
10           Based on this legislative intent, district courts throughout the Ninth Circuit have
11    interpreted CAFA expansively, resolving doubts in favor exercising of jurisdiction. *See, e.g.*
12    *Yeroushalmi v. Blockbuster, Inc.,* 2005 WL 2083008, *3-5 (C.D. Cal. 2005) (court held removal
13    proper in light of legislative intent to expand federal jurisdiction over class actions); *Kearns v.*
14    *Ford Motor Co.,* 2005 WL 3967998 at *1-2 (C.D.Cal. 2005) (removal allowed noting CAFA's
15    liberal rules of removal); *Waitt v. Merck & Co., Inc.,* 2005 WL 1799740, *1-2 (W.D. Wash.
16    2005) (remand denied, noting that "[o]verall, new section 1332(d) is intended to expand
17    substantially federal court jurisdiction over class actions").
18           Here, as discussed in detail below, Priceline demonstrated that this case is precisely the
19    type of case that the CAFA drafters had in mind.  The allegations are brought on behalf of all
20    California consumers.[2]  Plaintiff also repeatedly states in his First Amended Complaint, filed in
21    this Court, after the removal, that his class claims are "in excess of the jurisdictional minimum."
22    F.A.C. at 11:18-25; 13:15-21; 16:10-12.  Further, Plaintiff seeks recovery not only of supposedly
23    "wrongful" rental car charges, which clearly exceed $5 million, but also punitive damages,
24    consequential damages, restitution, disgorgement of unlawful profits, attorneys fees, and
25    injunctive relief, which, without more, would likely make up the jurisdictional minimum.  Even

26    _____
27    [2]    According to Plaintiff's Motion to Remand, he intends to pursue claims for a potential
       class of nationwide consumers as well.  Plaintiff states in his Motion to Remand that he
       "intends to moves[sic] for leave to amend to allege his breach of contract and fraud
28    claims on behalf of a nationwide class." (Motion to Remand, p.5, fn. 1).

-6-

1    assuming there is doubt, this Court should err in favor of federal jurisdiction, instructed by the

2    legislative intent behind CAFA.

3    **C.    Plaintiff Cannot Force A Remand By Attempting to Manipulate The Amount In**

4    **Controversy**

5         **1.    The Amount In Controversy Must Be Determined From The Initial Complaint**

6              **And At The Time Of Removal**

7         The Ninth Circuit has "… long held that post removal amendments to the pleadings

8    cannot affect whether a case is removable, because the propriety of removal is determined solely

9    on the basis of the pleadings filed in State Court." *Williams, supra,* 471 F.3d at 976 (denying

10   remand and refusing to consider amended complaint filed after removal).  Thus, this court's

11   "jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal."

12   *Sparta, supra,* 159 F.3d at 1213; *See also, Rogers v. Wal-Mart Stores, Inc.,* 230 F.3d 868, 872

13   (6th Cir. 2000); *Meritcare, Inc. v. St. Paul Mercury Ins. Co.* 166 F.3d 214, 217-218 (3rd Cir.

14   1999) ("the amount in controversy is measured as of the date of removal, a practice similar to

15   that in original jurisdiction suits where the inquiry is directed to the time when the complaint is

16   filed").

17        In measuring the amount in controversy, this Court must "assume that the allegations of

18   the complaint are true and assume that a jury [will] return[ ] a verdict for the plaintiff on all

19   claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F.

20   Supp. 2d 993, 1001 (C.D. Cal. 2002); *see also, Richmond v. Allstate Ins. Co.,* 897 F. Supp. 447,

21   449 (S.D. Cal. 1995) (To determine the amount in controversy, courts construe the allegations in

22   the complaint); *see also, Pachinger v. MGM Grand Hotel-Las Vegas, Inc.,* 802 F.2d 362, 363

23   (9th Cir. 1986) ("The amount in controversy is normally determined from the face of the

24   pleadings").  Thus, this Court must assume that Plaintiff's original "forty percent failure"

25   allegation is true.  Plaintiff's emphasis on the "up to" forty percent language is to no avail.  If a

26   jury were to return "a verdict for plaintiff on all claims made in the Original Complaint" it could

27   theoretically include the claim of a forty percent failure rate.

28        The general rule, well-settled in the Ninth Circuit is that federal jurisdiction based on

---

-7-

1  diversity and satisfying the amount in controversy cannot be destroyed by subsequently reducing

2  the amount in controversy below the jurisdictional minimum. *See, Hill v. Blind Indus. & Servs.*,

3  179 F.3d 754, 757 (9th Cir. 1999). *Hill* held that diversity jurisdiction is assessed at the time the

4  action commences. A federal court is not divested of jurisdiction when a party subsequently

5  moves to another state or the amount in controversy later drops below the minimum

6  jurisdictional level. *See also, Northeast Clackamas County Electric Co-op., Inc. v. Continental*

7  *Casualty Co.*, 221 F.2d 329, 332 (9th Cir. 1955) ("Jurisdiction on diversity grounds existing at

8  the commencement of an action is not divested by a subsequent reduction of the amount in

9  controversy below the jurisdictional minimum.").

10        Once jurisdiction has properly vested, a plaintiff's reduction of his claim for the purpose

11  of destroying subject matter jurisdiction has no legal effect. *See, e.g.*, *Angus v. Shiley Inc.*, 989

12  F.2d 142, 145 (3rd Cir. 1993) ("a plaintiff following removal cannot destroy federal jurisdiction

13  simply by amending a complaint that initially satisfied the monetary floor."); *Shaw v. Dow*

14  *Brands, Inc.*, 994 F.2d 364, 367 (7th Cir. 1993) ("It seems unfair to defendants if a plaintiff can

15  simply wait to see if her case is removed and then, once it is, have it sent back to state court by

16  agreeing to a stipulation that the amount in controversy will not surpass [the jurisdictional

17  minimum]").

18        Any other rule would mean jurisdiction is a moving target, and a plaintiff could evade

19  federal jurisdiction by post-removal amendments or stipulations reducing the complaint's damage

20  claims, forcing remand of properly-removed actions for purely tactical reasons. Therefore, when

21  a plaintiff chooses to overplead his complaint, he has accepted the risk that he will plead himself

22  into federal court.

23        **2.    The Allegations In Plaintiff's Complaint Establish That The Amount In**

24              **Controversy Exceeds $5 Million**

25        The procedure in the Ninth Circuit for determining the amount in controversy for the

26  purposes of removal requires the district court to first consider whether it is "facially apparent"

27  from the complaint that the jurisdictional amount is in controversy. *Singer v. State Farm Mutual*

28  *Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997), *citing Allen v. R & H Oil & Gas Co.*, 63 F.3d

-8-

1  1326 (5th Cir. 1995); *see also, Conrad Associates v. Hartford Accident & Indemnity Co.*, 994 F.

2  Supp. 1196, 1198 (N.D. Cal. 1998). In cases where a plaintiff's state court complaint does not

3  specify an exact figure for damages, the defendant must establish by a "preponderance of the

4  evidence" that the amount in controversy exceeds the statutory minimum. *Sanchez v.*

5  *Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

6     To meet the preponderance of the evidence standard, a defendant must merely prove that

7  it is "more likely than not" that the amount in controversy exceeds the requisite jurisdictional

8  amount of $5 million. *Id.; Faulkner v. Astro-Med, Inc.*, 1999 WL 820198 (N.D. Cal. 1999);

9  *Ajimatanrareje v. Metropolitan Life Ins. Co.*, 1999 WL 319216 (N.D. Cal. 1999). The

10  preponderance of the evidence standard thus does not place a heavy burden on a defendant

11  seeking removal. *See Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1204-1205

12  (E.D.Cal. 2008) ("Said burden is not 'daunting,' as courts recognize that under this standard, a

13  removing defendant is *not* obligated to 'research, state, and prove the plaintiff's claims for

14  damages'"). Once Defendant has presented such proof, it becomes the Plaintiff's burden to

15  show, as a matter of law, that it is certain he will <u>not</u> recover the jurisdictional amount. *Kenneth*

16  *Rothschild Trust v. Morgan Stanley, supra*, 199 F. Supp. 2d at 1001 (C.D. Cal. 2002).

17     Plaintiff's Motion is based entirely on calculations Priceline shared with Plaintiff as part

18  of Priceline's CLRA cure. Preliminarily, the letter is inadmissible. Moreover, it is irrelevant,

19  because the allegations in Plaintiff's Original Complaint that determine jurisdiction. Priceline

20  has met its burden to establish that the amount in controversy exceeds $5 million based on the

21  allegations in the Original Complaint, and the sworn declaration of Mr. Jose attesting that

22  Priceline received approximately $85,000,000 in total revenue from consumers with California

23  billing addresses who booked a rental car through Priceline's "Name Your Own Price" service.

24  (Declaration of William Jose filed in Support of Priceline's Notice of Removal at p. 5:12-23).

25  Plaintiff alleges in his original Complaint that "up to 40% of the reservations made through

26  Priceline's Websites are improperly transferred to Priceline's rental car partners, and that in each

27  instance, Priceline refuses to refund customers' money or reimburse customers' for any

28  additional expenses that are incurred due to the fact that the reservation was in error." (O.C. at

1  5:20-24). Plaintiff's allegations, as apparent from the face of his original complaint, are that up

2  to 40% of Priceline's Name Your Own Price® rental car consumers are in the same situation as

3  Plaintiff and require a refund for their transactions, and possibly additional consequential

4  damages. Forty percent of the $85 million in total revenue received by Priceline from consumers

5  with California billing addresses who reserved rental cars using Priceline's Name Your Own

6  Price® service equals $34 million. Therefore, based on the Jose Declaration, and the allegations

7  of the complaint, Priceline has met its burden to establish that the amount in controversy exceeds

8  $5 million. Under *Kenneth Rothschild Trust v. Morgan Stanley*, *supra*, the burden shifts to

9  plaintiff to show it is "certain" he cannot recover the jurisdictional minimum.

10  **3.  Plaintiff Offers No Evidence To Rebut Defendant's Evidence Supporting The**

11  **Amount In Controversy**

12  Plaintiff's Motion for Remand is premised entirely on a letter sent by Priceline to Plaintiff

13  as part of the CLRA "cure process." (Motion to Remand, Ex. A). In the cure letter, Priceline

14  informed Plaintiff that it had located at most 500 individuals over the last four years with

15  situations arguably similar to Mr. Hauer's, and that it was willing to provide any individuals who

16  had not already been made whole with an appropriate remedy. *Id.* Priceline also informed

17  Plaintiff in this letter that its records showed that its records showed that the situation

18  experienced by Mr. Hauer appeared to be very rare, occurring in at most, 1/10 of 1% of

19  reservations. *Id.* Plaintiff seizes on these numbers, provided by Priceline, to support his Motion

20  to seek remand. Plaintiff, however, is equivocal in his embrace of them.

21  Indeed, plaintiff recognizes in his motion that he is calculating the amount in controversy

22  by 1) relying on the numbers provided by Priceline in its CLRA cure letter (which as just

23  discussed, is not proper because these figures were not a part of the original complaint and are

24  inadmissible) and 2) making additional guesses as to how the number of customers mentioned in

25  Priceline's CLRA cure letter would translate into a total monetary figure in controversy. (Motion

26  for Remand, at pp. 4-6). Plaintiff admits that he has "no evidence" to support these guestimates

27  (*Id.* at 5:2-4) and admits "Plaintiff actually has no knowledge how many transactions are at

28  issue" (*Id.* at 5:22-23). In short, Plaintiff offers speculation but no evidence to rebut the

1    declaration of William Jose of Priceline in support of the amount in controversy. When

2    evaluating the amount in controversy for purposes of a remand motion, the court should consider

3    the evidence presented, not speculation. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d

4    1089 (9th Cir. 2003) ("conclusory allegations as to the amount in controversy are insufficient.");

5    *Wilson v. Union Sec. Life Ins. Co.*, 250 F. Supp. 2d 1260, 1263 (D. Idaho 2003) ("To rely on

6    what effectively is mere speculation and conjecture is contrary to the Ninth Circuit's requirement

7    that the jurisdictional determination be grounded on a factual basis that is similar in quality to

8    "summary-judgment-type evidence").

9        This does not suffice to meet Plaintiff's burden under *Kenneth Rothschild Trust v.*

10    *Morgan Stanley, supra*, to "demonstrate as a matter of law that it is certain he will not recover

11    the jurisdictional amount." *Kenneth Rothschild Trust v. Morgan Stanley, supra*, 199 F. Supp. 2d

12    at 1001.

13       **4.**    **Plaintiff Seeks A Wide Variety Of Other Relief And Damages That Further**

14             **Support That The Amount In Controversy Pled Exceeds $5 Million**

15        In addition to recoupment of all "wrongful" rental car charges, Plaintiff seeks a wide

16    variety of other relief and damages, including an injunction against Priceline, restitution, punitive

17    damages, consequential damages, attorneys fees, and disgorgement of unlawful profits

18    attributable to the "wrongful" conduct. O.C. at 10:13-16, 26-28; 11: 1-25; 12:24-28; 13:1-22;

19    15:1-15; 16:10-20; 18:8-28; 19:1-28. Although Plaintiff concedes in his First Amended

20    Complaint, filed in this court, that his class claims are "in excess of the jurisdictional minimum"

21    (F.A.C. at 11:18-25; 13:15-21; 16:10-12), any *one* of these other claims could easily make up the

22    jurisdictional minimum. The amount in controversy properly includes the costs to the defendant

23    if injunctive relief requested were to be granted. *Rodgers v. Cent. Locating Serv.*, 412 F. Supp.

24    2d 1171, 1179 (D. Wash. 2006) (Under CAFA, the total relief sought by all class members is

25    aggregated for purposes of evaluating the $5,000,000 jurisdictional threshold. (citation) And the

26    "value" of injunctive relief is determined by calculating the defendant's costs of compliance…).

27    For example, where a complaint seeks injunctive relief, the amount in controversy may include

28    the cost to the defendant if such relief is granted. *See, BEM I. L.L.C. v. Anthropologie, Inc.*, 301

1   F.3d 548, 553 (7th Cir. 2002.) As *BEM* observed: "It seems to us beyond absurd to allow a
2   defendant to remove if the plaintiff is seeking damages of $75,000.01, but not if the plaintiff is
3   seeking an injunction directing the defendant to tear down, as a nuisance, a $10 million building
4   that the defendant owns." Likewise, the amount in controversy may include punitive damages if
5   they are recoverable under state law and it cannot be said, to a legal certainty, that plaintiff would
6   not be entitled to recover the jurisdictional amount. *See, e.g., Anthony v. Security Pac. Fin'l*
7   *Services, Inc.,* 75 F.3d 311, 315 (7th Cir. 1996); *Watson v. Blankenship,* 20 F.3d 383, 386-387
8   (10th Cir. 1994); *St. Paul Reinsurance Co. v. Greenberg,* 134 F.3d 1250, 1253-1254 (5th Cir.
9   1998) (amount in controversy includes statutory penalties). Attorneys' fees are also included in
10  determining the amount in controversy, regardless whether the fee award is mandatory or
11  discretionary. *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155-56 (9th Cir. 1998). Plaintiff
12  seeks both, and both are theoretically available under the CLRA. California Civil Code Section
13  1780(a)(4),(d).

14      Thus, should plaintiff succeed in his request for an injunction, barring Priceline from
15  using its Name Your Own Price ® car rental reservation service, the resulting loss of revenue
16  could be a proper component in calculating the total amount in controversy. Or, if Priceline were
17  instead ordered to monitor its rental car partners, to ensure all Name Your Own Price ®
18  reservations are being properly handled, the cost of monitoring should be considered. Similarly,
19  though the amount of punitive damages is unspecified here, punitive damage verdicts in
20  consumer class actions may easily run into the millions.[3] Under federal due process standards,
21  punitive damage verdicts in economic loss cases could equal the compensatory damages, or
22  exceed them by 4:1, or perhaps even as much as 9:1. *See, State Farm Mut. Auto. Ins. Co. v.*
23  *Campbell,* 538 U.S. 408, 425 (2003) (permissible due process ratio of punitive to compensatory
24  damages may range from 1:1 to 9:1); *see also, e.g., Smith v. General Accident Ins. Co,* 337 F.3d
25  888, 894 (7th Cir. 2003) (using *Campbell's* ratio guidelines to determine amount of punitive

26  _____
        [3]  *See, e.g., Crawley v. Daimler-Chrysler*, Case No. 90-07-4900, plaintiffs brought class
27      action lawsuit in Pennsylvania that alleged product liability, breach of warranty, fraud and
        violation of Pennsylvania's consumer protection laws; the jury awarded a $3.75 million
28      punitive damage award. *See*, 14 Nat. J.V.R.A. 8:C1 (1999).

1    damages potentially in controversy for purposes of remand); *see also*, *Munro v. Golden Rule Ins.*
2    *Co.*, 393 F.3d 720, 721 (7th Cir. 2004) (same).

3    **D.    In The Event Of Remand, The Court Should Deny Plaintiff's Request For Costs**
4    **And Attorney's Fees**

5          Priceline believes remand would be improper here, but will nonetheless briefly address
6    Plaintiff's request for fees in connection with his Motion. An award of costs and attorneys' fees
7    against Priceline is not appropriate because Priceline had an objectively reasonable basis for
8    removal at the time of filing its original petition for removal. With regard to attorneys' fees, there
9    is no automatic entitlement to an award on remand. Rather, 28 U.S.C. § 1447(c) pertaining to
10   attorneys' fees provides that "[a]n order remanding the case *may* require payment of just costs
11   and actual expenses, including attorney fees." *Id.* [emphasis added]. Thus, such an award in
12   entirely discretionary. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 126 S. Ct. 704, 708-09
13   (2005). Moreover, the United States Supreme Court has held that absent unusual circumstances,
14   attorneys' fees should *not* be awarded when the removing party has an objectively reasonable
15   basis for removal. *Martin, supra*, at 140; *see also, Gardner v. UICI*, 508 F.3d 559, 561 (9th Cir.
16   2007). As demonstrated by the evidence submitted by Priceline in its original petition for
17   removal, all of the requirements for federal diversity jurisdiction exist in the present case.

18         Priceline's reasonable basis for removal is further evidenced by the fact that Priceline
19   attempted to resolve the issue of jurisdiction prior to Plaintiff filing his Motion. During the meet
20   and confer emails exchanged between the parties, Plaintiff explained that his key complaint was
21   Priceline's failure to demonstrate the jurisdictional minimum as evidenced by the figures
22   contained in Priceline's CLRA "cure" letter. (Jauregui Decl. at ¶ 2, Ex. A). Plaintiff stated that
23   Priceline's investigation "suggest[s] that the amount in controversy is less than $85,000." (*Id.*,
24   Ex. A). Priceline reviewed Plaintiff's arguments, and informed Plaintiff that, based on the
25   allegations contained in Complaint, the total amount in controversy exceeded $5 million, but that
26   if Plaintiff would stipulate to an $85,000 amount in controversy, as per plaintiff's email,
27   Priceline would agree to remand. (*Id.* at ¶ 3, Ex. B). Plaintiff refused to stipulate to this amount
28   and instead brought this motion. (*Id.* at ¶ 3).

1    The purpose of 28 U.S.C. Section 1447(c) is to deter abuse and the prolonging of

2  unnecessary litigation, while still affording a defendant their right to remove. *Gardner v. UICI*,

3  508 F.3d 559, 561 (9th Cir. 2007). Priceline has competent evidence to support its contention

4  that the amount in controversy in Plaintiff's original and amended Complaint exceeds the

5  jurisdictional minimum, in addition to Plaintiff's own express allegations in the F.A.C. that the

6  class claims exceed the jurisdictional minimum. These factors confirm that Priceline had an

7  objective and reasonable basis to remove the matter. Accordingly, an award of costs and

8  attorneys' fees to Plaintiff is unwarranted.

9                                       **IV.**

10                                    **CONCLUSION**

11    Based on the foregoing, Priceline respectfully requests that the Court deny Plaintiff's

12  Motion in its entirety. Removal jurisdiction is proper under the Class Action Fairness Act.

13  Priceline has met its burden to establish that the amount in controversy more likely than not

14  exceeds $5 million.

15

16  DATED: July 8, 2008                    SEDGWICK, DETERT, MORAN & ARNOLD LLP

17

18                                    By: /s/ Jacqueline M. Jauregui
                                          Jacqueline M. Jauregui
                                          Attorneys for Defendant
19                                        PRICELINE.COM, INC

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1   SEDGWICK, DETERT, MORAN & ARNOLD LLP
    JACQUELINE M. JAUREGUI  Bar No. 095289
2   jacqueline.jauregui@sdma.com
    MARINA L. WHELAN  Bar No. 251087
3   marina.whelan@sdma.com
    801 South Figueroa Street, 19th Floor
4   Los Angeles, California 90017-5556
    Telephone: (213) 426-6900
5   Facsimile: (213) 426-6921

6   SEDGWICK, DETERT, MORAN & ARNOLD LLP
    Matthew A. Fischer  (No. 191451)
7   matthew.fischer@sdma.com
    One Market Plaza
8   Steuart Tower, 8th Floor
    San Francisco, CA  94105
9   Telephone: (415) 781-7900
    Facsimile: (415) 781-2635
10
    Attorneys for Defendant
11  PRICELINE.COM, INC.

12              UNITED STATES DISTRICT COURT

13           NORTHERN DISTRICT OF CALIFORNIA

14

15  GLEN HAUER, an individual, on behalf of      CASE NO.    CV 08-02608 JSW
    himself, the general public, and those
16  similarly situated,
                                                 The Honorable Jeffrey S. White
17                              Plaintiff,

18      v.                                       DECLARATION OF JACQUELINE M.
                                                 JAUREGUI IN SUPPORT OF PRICELINE'S
19  PRICELINE.COM INCORPORATED, a                OPPOSITION TO PLAINTIFF'S MOTION
    foreign corporation; ALAMO RENT-A-           FOR REMAND
20  CAR LLC, a foreign limited liability
    company; VANGUARD CAR RENTAL
21  USA, INC., a foreign corporation; and
    DOES 1 through 50                            HEARING DATE: August 8, 2008
22                                               TIME:              9:00 a.m.
                                Defendant.       COURTROOM:    2
23
                                                 Amended Class Action Complaint Filed:
24                                               June 9, 2008

25

26      I, Jacqueline M. Jauregui, declare:

27          1.    I am an attorney licensed to practice in the State of California and a partner at the

28  law firm of Sedgwick, Detert, Moran & Arnold LLP, located at 801 S. Figueroa St., 19th Floor,

                                            -1-

1   Los Angeles, California 90017, attorneys of record for Priceline.com, Incorporated (Priceline). I

2   have personal knowledge of the matters stated in this Declaration, and if called as a witness,

3   could testify competently to them.

4          2.      Before Plaintiff filed his Motion to Remand Action to State Court, I received a

5   meet and confer email from Plaintiff's counsel Mr. Gutride on or about June 10, 2008. A true

6   and correct copy of this email is attached as Exhibit A. Plaintiff's counsel alleged in this email

7   that Priceline had not met its burden of proof to show federal jurisdiction. Plaintiff argued that,

8   based on information contained in Priceline's letter responding to Plaintiff's CLRA demand

9   (attached as Exhibit A to the Declaration of Adam Gutride Filed in Support of Plaintiff's Motion

10  to Remand Action to State Court), that "the amount in controversy is less than $85,000." *See*

11  Exhibit A attached hereto. Plaintiff thus requested that Priceline stipulate to a remand. *Id.*

12         3.      I responded to Plaintiff's by email on or about June 12, 2008. A true and correct

13  copy of this email is attached hereto as Exhibit B. This letter explained that Priceline removed

14  the action based on allegations in the original complaint. *See* Exhibit B. Based on Mr. Gutride's

15  assertion in his June 10, 2008 email that "the amount in controversy is less than $85,000" (*See*

16  Exhibit A), I offered that if Plaintiff would agree to a maximum recovery $85,000, Priceline

17  would stipulate to a remand. *See* Exhibit B. Plaintiff did not respond, but instead filed a Motion

18  to Remand on June 23, 2008.

19         I declare under penalty of perjury under the laws of the United States that the foregoing is

20  true and correct.

21  DATED:  July 8, 2008

22
                        By: /s/ Jacqueline M. Jauregui
23                          Jacqueline M. Jauregui

24

25

26

27

28

-2-

Declaration Of Jacqueline M. Jauregui In Support of Opposition To Motion For Remand

## LIST OF EXHIBITS

Adam Gutride meet and confer email dated June 10, 2008, 10:35 a.m.          Exhibit A

Email from Jacqueline Jauregui dated June 12, 2008, 1:18 a.m.          Exhibit B

**EXHIBIT A**

Adam Gutride meet and confer email dated June 10, 2008, 10:35 a.m.

**Whelan, Marina**

| | |
|---|---|
| From: | Adam Gutride [adam@gutridesafier.com] |
| Sent: | Tuesday, June 10, 2008 10:35 AM |
| To: | Jiyun Cameron Lee; Jauregui, Jacqueline; Whelan, Marina |
| Cc: | Seth Safier |
| Subject: | Hauer v. Priceline: Removal and Remand |

Dear Counsel,

I am writing to meet and confer with you about Priceline's removal of this case to federal court. We do not believe the removal is justified, as Defendants have not demonstrated that the amount in controversy exceeds $5 million. "[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." Abrego Abrego v. The Dow Chemical Co., 443 F. 3d 676, 685 (9th Cir. 2006) (per curiam); see also Serrano v. 180 Connect, Inc., 2007 U.S. App. LEXIS 3818, 2007 WL 601984 (9th Cir. Feb. 22, 2007) (proponent of federal jurisdiction bears burden of proving jurisdiction); accord Morgan v. Gay, 471 F.3d 469, 472-73 (3d Cir. 2006) (under CAFA, party seeking removal bears burden of establishing requisite amount in controversy; Miedema v. Maytag Corp., 450 F.3d 1322, 1328-29 (11th Cir. 2006) (CAFA does not alter traditional rule that proponent of federal jurisdiction bears burden of proving amount in controversy

Priceline bases the removal on a line in the complaint that alleges that "up to 40% of the reservations made through Priceline's Websites are improperly transferred to Priceline's rental car partners." Priceline then argues that if all the money earned on 40% of its "name your own price transactions" had to be refunded, the amount in controversy would exceed $5 million. There are several flaws in this analysis. First, plaintiff has not alleged that 40% of transactions need to be refunded, and he does not know how many transactions are at issue, which is why the "up to" language was used. Furthermore, the "up to 40%" figure comes from a statement made by an Alamo representative to Plaintiff at the Albuquerque ticket counter, and it is unlikely that she knew the scope of transactions for other offices or Alamo or other rental car partners. (This fact has been clarified in the recently filed amended complaint.) Second, defendant stated in response to the CLRA demand that the problem has affected fewer than 0.1% of its customers, and Mr. Jose declared that the total amount billed through the "name your own price" transactions was $85 million. These figures would suggest that the amount in controversy is less than $85,000. Third, defendant has stated there are no more than 500 transactions at issue in California. Even if the nationwide figure is ten times as great, the average transaction size would have to be $1000, an extremely unlikely figure, for $5 million to be in controversy.

As defendant has not met its burden to demonstrate the existence of federal jurisdiction (and, as far as we know, cannot meet that burden), plaintiff intends to move to remand. If he succeeds, he will be entitled under 28 U.S.C. § 1447(c) to recover attorneys' fees incurred in connection with the remand motion.  . See Moore v. Permanente Medical Group, Inc., 981 F.2d 443, 446 (9th Cir. 1992); Balcorta v. Twentieth Century Fox Film Corp., 208 F.3d 1102, 1106, n.2 (9th Cir. 2000). We therefore ask you to stipulate to remand, so that motion practice is not necessary. Please let me know by Thursday June 12 at 12:00 p.m. whether you will agree to do so. Please let me know if you have any questions.

Sincerely yours,
Adam Gutride

1

Gutride Safier LLP
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 271-6469
Facsimile: (415) 449-6469
Email: adam@gutridesafier.com
www.gutridesafier.com

## EXHIBIT B

Email from Jacqueline Jauregui dated June 12, 2008, 10:18 a.m.

**Whelan, Marina**

| | |
|---|---|
| **From:** | Jauregui, Jacqueline |
| **Sent:** | Thursday, June 12, 2008 10:18 AM |
| **To:** | 'Adam Gutride'; 'Jiyun Cameron Lee'; Whelan, Marina |
| **Cc:** | 'Seth Safier'; Maritz, Maxine |
| **Subject:** | RE: Hauer v. Priceline: Removal and Remand |



Jauregui
acqueline.vcf (3 KB.

Adam,

I appreciate you taking the time to discuss this issue in advance of filing any motion. We understand it is Priceline's burden of proof, as removing party, to demonstrate the amount in controversy. We believe the allegations of your original complaint, together with Mr. Jose's declaration, meet that burden. Also, the law is clear that the operative complaint at the time of removal is what the court will consider to determine jurisdiction, not subsequent amendments.

Having said that, if you are willing to stipulate to a maximum recovery of $85,000, we will agree to a remand. Otherwise, you should proceed with a motion. I do think, however, that our resources at this point are best focused on the cure process under the CLRA which Priceline has undertaken, rather than motion practice. If you decide to move for remand, I encourage you to handle the briefing in a fashion that will give Priceline time to complete the cure, and give the parties maximum time to reach any resolution associated with that cure, without expending resources on motion practice. Also, I will be taking up with the client your request for further "call codes", with that end in mind.

Regards,
Jackie Jauregui

-----Original Message-----
From: Adam Gutride [mailto:adam@gutridesafier.com]
Sent: Tuesday, June 10, 2008 10:35 AM
To: Jiyun Cameron Lee; Jauregui, Jacqueline; Whelan, Marina
Cc: Seth Safier
Subject: Hauer v. Priceline: Removal and Remand


Dear Counsel,

I am writing to meet and confer with you about Priceline's removal of this case to federal court. We do not believe the removal is justified, as Defendants have not demonstrated that the amount in controversy exceeds $5 million. "[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." Abrego Abrego v. The Dow Chemical Co., 443 F. 3d 676, 685 (9th Cir. 2006) (per curiam); see also Serrano v. 180 Connect, Inc., 2007 U.S. App. LEXIS 3818, 2007 WL 601984 (9th Cir. Feb. 22, 2007) (proponent of federal jurisdiction bears burden of proving jurisdiction); accord Morgan v. Gay, 471 F.3d 469, 472-73 (3d Cir. 2006) (under CAFA, party seeking removal bears burden of establishing requisite amount in controversy; Miedema v. Maytag Corp., 450 F.3d 1322, 1328-29 (11th Cir. 2006) (CAFA does not alter traditional rule that proponent of federal jurisdiction bears burden of proving amount in controversy

Priceline bases the removal on a line in the complaint that alleges that "up to 40% of of the reservations made through Priceline's Websites are improperly transferred to Priceline's rental car partners." Priceline then argues that if all the money earned on 40% of its "name your own price transactions" had to be refunded, the

1

amount in controversy would exceed $5 million.    There are several flaws in this analysis.  First, plaintiff has not alleged that 40% of transactions need to be refunded, and he does not know how many transactions are at issue, which is why the "up to" language was used.    Furthermore, the "up to 40%" figure comes from a statement made by an Alamo representative to Plaintiff at the Albuquerque ticket counter, and it is unlikely that she knew the scope of transactions for other offices or Alamo or other rental car partners.  (This fact has been clarified in the recently filed amended complaint.)  Second, defendant stated in response to the CLRA demand  that the problem has affected fewer than 0.1% of its customers, and Mr. Jose declared that the total amount billed through the "name your own price" transactions was $85 million.  These figures would suggest that the amount in controversy is less than $85,000.  Third, defendant has stated there are no more than 500 transactions at issue in California.  Even if the nationwide figure is ten times as great, the average transaction size would have to be $1000, an extremely unlikely figure, for $5 million to be in controversy.

As defendant has not met its burden to demonstrate the existence of federal jurisdiction (and, as far as we know, cannot meet that burden), plaintiff intends to move to remand.  If he succeeds, he will be entitled under 28 U.S.C. § 1447(c) to recover attorneys' fees incurred in connection with the remand motion.  .  See Moore v. Permanente Medical Group, Inc., 981 F.2d 443, 446 (9th Cir. 1992); Balcorta v. Twentieth Century Fox Film Corp., 208 F.3d 1102, 1106, n.2 (9th Cir. 2000).  We therefore ask you to stipulate to remand, so that motion practice is not necessary.  Please let me know by Thursday June 12 at 12:00 p.m. whether you will agree to do so.  Please let me know if you have any questions.

Sincerely yours,
Adam Gutride
Gutride Safier LLP
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 271-6469
Facsimile: (415) 449-6469
Email: adam@gutridesafier.com
www.gutridesafier.com