**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNA

GLEN HAUER, an individual, on behalf of himself, the general public and those similarly situated

    Plaintiff,

        v.

PRICELINE.COM INCORPORATED, a foreign corporation; ALAMO RENT-A-CAR LLC, a foreign limited liability company; VANGUARD CAR RENTAL USA, INC., a foreign corporation; AND DOES 1 THROUGH 50

    Defendants

CASE NO.  CV-08-2608-JSW

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND MOTIONS TO STRIKE ALLEGATIONS IN PLAINTIFF'S FIRST AMENDED COMPLAINT**

Date: September 19, 2008
Time: 9:00 am
Dept:  Courtroom 2, 17th Floor
Judge:  Hon. Jeffrey S. White

1

## TABLE OF CONTENTS

2

I.    INTRODUCTION ........................................................................................................1

II.   STATEMENT OF THE CASE .................................................................................1

III.  ARGUMENT ..............................................................................................................4

    A.   Defendants' Motion To Dismiss ......................................................................4

        1.   Legal Standard ..........................................................................................4

        2.   Plaintiff Adequately Pleads Each Cause Of Action...........................5

            a.   Plaintiff Adequately Pleads Violations Section 17200 and
                 Section 17500 of the Business and Professions Code
                 Against Priceline and Alamo ..........................................................5

                (1)   Priceline...........................................................................6

                (2)   Alamo ...............................................................................8

            b.   Plaintiff Adequately Pleads Claims Under the CLRA Against
                 All Defendants ...............................................................................10

            c.   Plaintiff Pleads Fraud With The Requisite Specificity .......................12

            d.   California Law Applies To This Case.................................................15

    B.   Defendants' Motions To Strike .......................................................................16

IV.   CONCLUSION..........................................................................................................18

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133 (C.D. Cal. 2005) ..................................8

*Armendariz v. Foundation Health Psychcare*, 24 Cal.4th 83 (2000) .........................................17

*Baas v. Dollar Tree Stores, Inc.*, 2007 U.S. Dist. LEXIS 65979 (N.D. Cal. 2007)...................16

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .............................................................5

*Brockey v. Moore*, 107 Cal. App. 4th 86, 98, 131 Cal. Rptr. 2d 746 (2003) ...............................5

*Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644 (1993). ......................................................8

*Conley v. Gibson*, 355 U.S. 41 (1957) ..........................................................................................4

*Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal.App.4th 1351 (2003) .................7, 11

*Cortez v. Purolator Air Filtration Products*, 23 Cal.4th 163 (2000) .........................................10

*Davis v. Scherer*, 468 U.S. 183 (1984) .........................................................................................4

*Day v. AT & T Corp.*, 63 Cal. App. 4th 325 (1998)....................................................................10

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655 (9th Cir. 1992).......................................................5

*Doe v. Regents of the Univ. of Cal.*, 2006 U.S. Dist. LEXIS 65035 (E.D. Cal. 2006) ................................................................................................................................18

*Erlich v. Menezes*, 21 Cal.4th at 543 (1999)...............................................................................14

*Everest and Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226 (9th Cir. 1994) ....................................................................................................................................7

*Farnham v. Superior Court* (1997) 60 Cal.App.4th 69 (1997)...................................................18

*Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995), cert. denied, 517 U.S. 1136 (1996) ...................................................................................................................................12

*H. S. Perlin Co. v. Morse Signal Devices*, 209 Cal.App.3d 1289 (1989) ..................................18

*Hanna v. Lane*, 610 F. Supp. 32 (N.D. Ill. 1985)........................................................................16

*Harris v. Atlantic Richfield Co.*, 14 Cal.App.4th 70, 78 (1993) ................................................14

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)...........................................12

*In re Tobacco II Cases*, Case No. S147345 (pending, Cal. Sup. Ct. 2008) .................................7

*In re Wal-Mart Stores, Inc.*, 2007 WL 1557935 (N.D. Cal. May 29, 2007)...............................16

*Jenkins v. McKeithen*, 395 U.S. 411 (1969)..................................................................................7

*Jimenez v. Superior Court*, 29 Cal.4th 473 (2002) .....................................................................14

*Kaplan v. Rose*, 49 F.3d 1363 (9th Cir. 1994), cert. denied, 516 U.S. 810 (1995)....................12

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003) .....................................10

*Lazar v. Superior Court*, 12 Cal. 4th 631 (1996)........................................................................15

*Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282 (2002).................7

*McQueen v. Tyler*, 61 Cal.App.2d 263 (1943) ............................................................................18

*Nagel v. Twin Laboratories, Inc.,* 109 Cal.App.4th 39 (2003) ...................................................11

*Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.*, 200 Cal. App. 3d 1518 (1988)................18

*Occidental Land, Inc. v. Superior Court*, 18 Cal.3d 355 (1976) .................................................7

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998) .................................................... 8, 17

*Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517 (9th Cir. 1994) ........................... 5

*People ex rel. Dep't of Transp. v. Superior Court*, 5 Cal. App. 4th 1480 (1992) .......... 12

*People ex rel. Kennedy v. Beaumont Investment, Ltd.*, 111 Cal.App.4th 102 (2003) ............... 10

*People v. Servantes*, 86 Cal.App.4th 1081 (2001) ......................................................... 5

*Reynolds v. Allstate Life Ins. Co.*, 2006 U.S. Dist. LEXIS 14548 (E.D. Cal. 2006) ............... 15

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ................................................................. 4

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) ............... 5

*Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120 (N.D. Cal. 2008) ........................... 17

*True v. Am. Honda Motor Co.*, 520 F. Supp. 2d 1175 (N.D. Cal. 2007) ........................ 8

*Tunkl v. Regents of University of California*, 60 Cal.2d 92 (1963) ................................ 18

*U.S. Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal.App.3d 143 (1991) ...................... 18

*Vasquez v. Superior Court*, 4 Cal.3d 800 (1971) ........................................................... 7

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ................................... 12

*Walker v. Signal Cos.*, 84 Cal. App. 3d 982 (1978) ...................................................... 15

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) ........................ 5

*Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906 (2001) ........................... 15

*Yu v. Signet Bank*, 69 Cal.App.4th 1377 (1999) .......................................................... 15

**STATUTES**

28 U.S. C. § 1332(d) ...................................................................................................... 4

28 U.S. C. § 1453 ........................................................................................................... 4

Cal Bus. Prof. Code § 17200 ......................................................................................... 5

Cal. Bus. & Prof. Code § 17500 .................................................................................... 5

Cal. Civ. Code § 1670.5 ................................................................................................ 18

Cal. Civ. Code § 1751 ................................................................................................... 18

Cal. Civ. Code § 1770 ................................................................................................... 11

Cal. Civ. Code § 3294(a) .............................................................................................. 15

**RULES**

Fed. R. Civ. P. 12(b ...................................................................................................... 8

Fed. R. Civ. P. 56(c) ..................................................................................................... 8

Fed. R. Civ. P. 9(b) ....................................................................................................... 12

Fed. R. Evid. 201 (b) ..................................................................................................... 17

**TREATISES**

5 Wright & Miller, Federal Practice and Procedure § 1382 ......................................... 16

1   Plaintiff respectfully submits this Opposition to Defendant Priceline.com, Inc.'s Motion

2   To Dismiss and Strike Allegations In The First Amended Complaint (Dkt.# 26) and Defendants

3   Alamo Rent-A-Car LLC and Vanguard Car Rental USA, Inc.'s Motion to Dismiss Plaintiff's

4   Amended Class Action Complaint, or, In the Alternative, To Strike Class Allegations (Dkt.# 27).

5   **I.      INTRODUCTION**

6   Defendants Priceline.com, Inc. ("Priceline") and Alamo Rent-A-Car LLC and Vanguard

7   Car Rental USA, Inc. (collectively, "Alamo")[1] move this Court to dismiss Plaintiff's first

8   amended complaint ("FAC").  Defendants invite this Court to invent a new legal standard for a

9   motion to dismiss and entirely ignore, or, at a minimum, construe in Defendants' favor, the FAC.

10  This Court should decline the invitation and deny Defendants' motions to dismiss.

11  **II.     STATEMENT OF THE CASE**

12  This case concerns Defendants' false advertising of the "Name-Your-Own-Price" car

13  rental reservation service and their failure to provide promised rental cars.  Plaintiff used the serv-

14  ice, which is provided by Priceline, to reserve and pay for a car rental from Alamo.  The compa-

15  nies represent that they have "teamed up…to provide the lowest rates for the most Alamo

16  customers." (First Amended Complaint ("FAC") ¶ 18.)  Yet when Plaintiff showed up at the ap-

17  pointed time, he was told that his requested car was not available and that he would be required to

18  pay hundreds of dollars in addition to the pre-paid amount in order to receive any vehicle.  (Id. ¶

19  20.)

20  Priceline is a leading online provider of discount travel services.   (FAC ¶ 16.)  Priceline

21  allows customers to use its websites to make pre-paid reservations for rental cars, hotel rooms,

22  airline tickets and vacation packages.  (Id.)   Customers can "Name Their Own Price" or select

23  from previously negotiated rates for rental cars, hotel rooms, airline tickets and vacation pack-

24  ages.  (Id.)  Priceline aggressively markets and advertises its rates on hotels, rental cars and air-

25  fares as "discount," "low price," "great deals," "value-conscious," "last minute deals," "weekend

26  deals," and "cheap."  (Id. ¶ 17.)  Priceline further states that for its "Name Your Own Price"

27

28  [1] Priceline and Alamo are collectively referred to herein, and in Plaintiff's First Amended Complaint, as "Defendants."

1    rental car reservations, "[i]f your offer is accepted, we will immediately lock in your reservation

2    and charge your credit card." (Id.) Priceline advertises that if customers name their own price,

3    their "rental car will be booked through one of the following companies (Alamo, Avis, Budget,

4    Hertz, or National)." (Id. ¶ 18.)

5         Pursuant to the booking services provided by Priceline, and the contractual arrangements

6    between Defendants Alamo Rent-A-Car LLC and Vanguard Car Rental USA, Inc. (collectively

7    "Alamo") and Priceline, Alamo is to provide rental car services in exchange for the payment col-

8    lected by Priceline for certain prepaid reservations. (Id.) Alamo authorizes Priceline to use

9    Alamo's trademarked logo in advertising rental car reservations and to include the following lan-

10   guage on the Priceline website: "Alamo and priceline: Priceline offers great deals to all Alamo

11   locations. Alamo has teamed-up with priceline.com to provide the lowest rates for the most

12   Alamo customers." (Id.)

13        On or about November 19, 2007, Plaintiff placed a $15.00 per day bid for rental of an

14   economy-sized car in Albuquerque, New Mexico from November 22, 2007 through

15   November 25, 2007. (Id. ¶ 19.) Plaintiff's pick-up time was specified as 9:30 pm and drop-off

16   time as 11:00 am. (Id.) As part of the bid process, Plaintiff was required to input his credit card

17   number to the Priceline website and agree, if his bid was accepted, to pay the associated $45.00

18   charge (*i.e.,* 3 days at $15.00) as well as additional charges for "Taxes and Fees." Plaintiff's bid

19   was accepted for a rental car to be provided by Alamo, and his credit card was charged $75.51 by

20   Priceline. (Id.)

21        On the evening of November 22, 2007, after taking a shuttle from the Albuquerque

22   International Airport terminal provided by the rental car companies, Plaintiff and his wife arrived

23   at the Alamo car rental desk at approximately 9:30 pm. (Id. ¶ 20.) At that time, he provided the

24   Alamo agent a copy of his reservation. (Id. ¶ 20; Ex. A.) The Alamo agent indicated that Alamo

25   had a record of his reservation but no record of payment. (Id. ¶ 20.) Additionally, the Alamo

26   agent stated that his reservation record indicated that he had reserved a "full-size" car when, in

27   fact, he had reserved an "economy" car. (Id.) Finally, the Alamo agent indicated that Alamo did

28   not have available any "economy cars" or even any "full-size" cars, but rather only a 7-passenger

1   van that would cost $206.10 for Plaintiff's rental dates.  (Id.)

2          Plaintiff then telephoned Priceline to ask for guidance.  (Id. ¶ 21.)  He was required to

3   navigate through the Priceline automated telephone system and speak to two or three different

4   representatives who were unable to assist him.  (Id.)  Eventually, he was connected to a Priceline

5   representative named Heather.  (Id.)  Heather acknowledged that she could see that the

6   reservation had been paid and that it was for an economy car.  (Id.)  She refused, however, to

7   instruct the Alamo rental car agent that the rental had been prepaid, stating that the department of

8   Priceline that works with Alamo was closed, and that she could not agree that Priceline would pay

9   the higher cost of the rental van.  (Id.)  Plaintiff asked to speak with a supervisor, but Heather

10  stated that in order to do so, Plaintiff would need to hang up and call a different number.

11         Given Plaintiff's fear of not receiving reimbursement from Priceline of the additional

12  $206.10, the late hour (due to the delay of dealing with the Priceline representative) and the

13  weather (a snowstorm was approaching from the North, and he did not feel safe driving a large

14  van), Plaintiff elected not to accept the 7-passenger van but to attempt to catch the last bus from

15  the Albuquerque airport to Santa Fe, which was departing at 10:00 p.m.  (Id. ¶ 22.)  Because of

16  the delay caused by the dispute, however, Plaintiff missed the bus, and it could not be recalled.

17  (Id.)  Plaintiff's wife asked a taxi driver if he would take them to Santa Fe, but the driver was

18  reluctant in light of the weather and further estimated the fare at (a minimum of) $100.  (Id.)

19  Accordingly, Plaintiff could not drive the approximately 75 miles to Santa Fe that evening, but

20  rather he and his wife were forced to stay in Albuquerque at a Wyndham hotel nearby the Airport.

21  (Id.)

22         The next morning, Plaintiff's brother (whose wedding was occurring that weekend) was

23  forced to drive from Santa Fe to Albuquerque to retrieve the couple from the Wyndham hotel and

24  then drive them back to Santa Fe.  (Id. ¶ 23.)  To return from Santa Fe, Plaintiff's wife took a

25  shuttle and Plaintiff took a commuter bus, at additional expense.  (Id.)  Despite the fact that no car

26  was available for Plaintiff, and that Plaintiff had so informed Priceline, Priceline still charged his

27  credit card $75.51.  (Id.)  Plaintiff disputed the charge with his credit card company, but Priceline

28  challenged the disputed charge, falsely claiming that Plaintiff was a "no show" at the Alamo

1   rental counter, so Plaintiff was forced to pay that amount. (Id. ¶ 24.)  Plaintiff alleges that this

2   was not an isolated incident but rather was part and parcel of Defendants' unfair and deceptive

3   business practices. (Id. ¶ 25.)

4       Plaintiff accordingly brought this action on February 6, 2007, on his own behalf and on

5   behalf of a class of similarly situated individuals, defined as "[a]ll California residents who paid

6   Priceline for a car rental but did not receive the agreed rental car at the agreed price when they

7   attempted to claim their pre-paid reservations."  (Id. ¶ 28.)   He makes five claims for relief, all

8   under California state law:  unfair competition, false advertising, breach of contract, violation of

9   the California Consumers Legal Remedies Act, and fraud, deceit and/or misrepresentation.

10      On May 23, 2008, Priceline filed a Notice of Removal to federal court.   Defendants

11  Alamo and Vanguard, on April 29, 2008, joined Priceline's notice of removal.   Defendants' sole

12  basis for the removal was the Class Action Fairness Act, 28 U.S. C. §§ 1332(d), 1453 ("CAFA").

13  Shortly thereafter, Defendants filed these motions to dismiss.

14      Plaintiff has pending a motion for remand.  If granted, the Court will not need to consider

15  these motions.  Plaintiff submits this opposition in the event that the case is not remanded.

16  **III.   ARGUMENT**

17      **A.    Defendants' Motion To Dismiss**

18          **1.    Legal Standard**

19      Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint

20  only if it fails to state a claim upon which relief can be granted.   More precisely, a motion to dis-

21  miss should only be granted if it appears beyond a doubt that the plaintiff "can prove no set of

22  facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41,

23  45-46 (1957).  The question is not whether a plaintiff will prevail in the action, but whether it is

24  entitled to offer evidence in support of its claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236

25  (1974), overruled on other grounds, *Davis v. Scherer*, 468 U.S. 183 (1984).

26      District courts are obligated to accept a plaintiff's allegations as true and construe them in

27  the light most favorable to plaintiff.  *Id*.  To survive a Rule 12(b)(6) motion, a complaint need not

28  contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief

that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964, 1974 (2007); *see also Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994) (courts must assume that all general allegations "embrace whatever specific facts might be necessary to support them"); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (at pleading stage, plaintiffs "need only show that the facts alleged, if proved, would confer standing upon him." (citations omitted)).  Each of Plaintiff's claims well exceeds this standard.

Finally, when the complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  Indeed, leave to amend is only really properly denied "where the amendment would be futile."[2]  *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992).

### 2. Plaintiff Adequately Pleads Each Cause Of Action

#### a. Plaintiff Adequately Pleads Violations Section 17200 and Section 17500 of the Business and Professions Code Against Priceline and Alamo

The UCL defines "unfair competition" to include "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of ... the Business and Professions Code." Cal Bus. Prof. Code § 17200.  "An unlawful business practice within the meaning of [the UCL] is one that is forbidden by law, whether civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *People v. Servantes*, 86 Cal.App.4th 1081, 1087 (2001).  California's false advertising law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq., makes advertising products or services by "untrue or misleading" statements unlawful. *See Brockey v. Moore*, 107 Cal. App. 4th 86, 98, 131 Cal. Rptr. 2d 746 (2003) *citing* Cal. Bus. & Prof. Code § 17500).  Violations of the FAL are also unfair competition under the UCL.  *See id*.

---

[2] Should this Court find any of Plaintiff's allegations insufficient to state a claim for relief, Plaintiff hereby requests leave to amend such allegations.

1    Plaintiff alleges that Defendants "have engaged, and continue to engage, in unfair, unlaw-

2  ful and deceptive trade practices in California by engaging in the unfair and illegal business prac-

3  tices outlined above, in particular by (1) charging customers for rental cars but not providing the

4  promised rental cars, (2) refusing to refund the amounts paid for the rental cars that were prom-

5  ised but not provided, and (3) refusing to compensate customers for additional expenses incurred

6  as a result of Defendant's failure to provide the promised rental cars.   Additionally, Defendants

7  have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices in Cali-

8  fornia by failing to properly inform their rental car partners of the true nature and existence of

9  their reservations and breaching the contracts that they enter into with customers."  (FAC ¶ 39.)

10                               **(1)    Priceline**

11    Priceline argues that Plaintiff inadequately pleads these causes of action because "refer-

12  ence to an off-hand comment by and Alamo employee and two unverified internet postings" are

13  merely "conclusory statements" that do not establish that manner in which Priceline violated the

14  UCL.  (Priceline Mot. at 11:5-14.)  Priceline additionally argues that "Plaintiff has not alleged

15  that he (or others) were misled by Priceline's representations or that Priceline engaged in some

16  fraudulent, unfair or unlawful conduct."  (Id. at 11:22-28.)  Finally, Priceline argues that Plaintiff

17  fails to state a false advertising claim because he does not allege any untrue or misleading state-

18  ments by Priceline.  (Id. at 12:20-21.)

19    Priceline simply must not have read Plaintiff's FAC—there is other no way that Plaintiff's

20  numerous allegations on these issues could have been missed.  In addition to all the allegations

21  about the circumstances that befell Plaintiff, he further alleges the following:

22
23        49.    Defendants have made representations and statements that its rates on rental cars
          are "discount," "low price," "great deals," "value-conscious," "last minute deals," "week-
24        end deals" and "cheap."   In fact, Defendants do not provide customers with the marketed
          and advertised discount rates, deals, etc. but rather force customers to pay inflated, last-
25        minute prices for rental cars that they previously reserved and paid for at "discount rates."

26        50.    Defendants have made representations that for its "name your own price" rental
          car reservations, "If your offer is accepted, we will immediately lock in your reservation
27        and charge your credit card."  In fact, Defendants do not "lock in" the reservation but

28

1    rather charge customers' credit cards even when the reserved car is not available and is
2    not provided.

3     (FAC ¶¶ 49, 50.)

4        Plaintiff accordingly alleges that Defendants violated the UCL and FAL because he did

5    not receive a "discount," "low price," "great deals," "value-conscious," "last minute deals,"

6    "weekend deals" or "cheap" rental car.   He did not receive a mid-size rental car on his desired

7    date.   His reservation was also neither "booked" nor "locked-in."   Instead, Plaintiff was "of-

8    fered" a 7-passenger van for $206.10.  (FAC ¶ 21.)   In short, Plaintiff received absolutely noth-

9    ing (but a serious inconvenience) for his $75.64.[3]   Such allegations, for purposes of these

10   motions, are to be accepted as true and construe them in the light most favorable to Plaintiff.  *See*

11   *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest and Jennings, Inc. v. American Motor-*

12   *ists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994).

13       Furthermore, if Priceline is arguing that Plaintiff must allege that he "relied" on the false

14   statements, that is an inaccurate reflection of the current state of UCL jurisprudence.  As this

15   Court is aware, every California state court case requiring a pleading of reliance in conjunction

16   with a UCL cause of action has been de-published by the California Supreme Court, which is cur-

17   rently considering the issue in the *Tobacco II* cases.  *See In re Tobacco II Cases*, Case No.

18   S147345 (pending, Cal. Sup. Ct. 2008)**.**  Until a decision is rendered in *Tobacco II*, reliance is not

19   required under existing Supreme Court precedent.  *See, e.g., Vasquez v. Superior Court*, 4 Cal.3d

20   800, 814 (1971); *see also Occidental Land, Inc. v. Superior Court*, 18 Cal.3d 355, 363 (1976);

21   *Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 1292-1293 (2002);

22

23   [3] In support of this argument, Priceline cites *Consumer Advocates v. Echostar Satellite Corp.*, 113
     Cal.App.4th 1351 (2003).  But *Consumer Advocates* provides no support to Defendants' arguments.  In-
24   deed, it supports Plaintiff's position.  To begin with, *Consumer Advocates* concerned not a demurrer or
     motion to dismiss but rather a motion for summary judgment.  Moreover, the lower court's decision grant-
25   ing summary judgment was *reversed* because there were triable issues concerning defendants' representa-
     tion.  *Id*. at 1361-62 (finding "that there is a triable issue of fact on the relevant point, whether these
26   representations [i.e., 50 channels and 7 days] are likely to deceive a reasonable consumer.)  The *Consumer
     Advocates* court also found some of defendants' representations to be true—"digital signal"—and some to
27   be in-actionable "puffery."   That, of course, is not the case here where Defendants do not dispute that
     Plaintiff's (and those similarly situated) rates were not "booked" or "locked in."  Defendants would also be
28   hard pressed to dispute that Alamo's inflated, last minute, retail rates are not, for example, "discount" or
     "weekend deals."

1   *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1137 (C.D. Cal. 2005). Even if reliance

2   were required to be pled, Plaintiff can easily add such an allegation, as he already alleges in the

3   context of his fraud cause of action that he relied on Defendants' false, misleading and deceptive

4   statements in booking a reservation with Defendants. (FAC ¶¶ 19, 86-87.) Specifically, he states

5   "Defendants intended to induce Plaintiff and those similarly situated to alter their position to their

6   detriment. Plaintiff and those similarly situated justifiably and reasonably relied on Defendants'

7   misrepresentations, and, accordingly, were damaged by the Defendants." (Id. ¶ 86-87.) Under

8   California law, such allegations are sufficient to satisfy any (hypothetical) reliance element. *See*

9   *True v. Am. Honda Motor Co.*, 520 F. Supp. 2d 1175, 1182-83 (N.D. Cal. 2007) (a plaintiff satis-

10  fies the reliance element with an allegation that a false or deceptive advertisement "induced the

11  plaintiff to alter his position to his detriment.") *citing Caro v. Procter & Gamble Co.*, 18 Cal.

12  App. 4th 644, 668 (1993)

13         Finally, Priceline begrudgingly argues that even if properly alleged, none of its representa-

14  tions to Plaintiff would be likely to deceive a reasonable consumer. Plaintiff strenuously dis-

15  agrees. But even were Priceline to be correct, answering such a question, at this stage, would

16  convert this motion to a FRCP Rule 56 motion for summary judgment, and necessitate that Plain-

17  tiff be provided with an opportunity to present evidence in response.[4] *See* Fed. R. Civ. P. 12(b);

18  *see also Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).

19                          **(2)    Alamo**

20         Alamo similarly argues that Plaintiff's UCL and FAL claims should be dismissed because

21  Plaintiff (1) does not allege that Alamo made any allegedly untrue, false, deceptive and/or mis-

22

---

23  [4] Summary judgment is only proper where "the pleadings, depositions, answers to interrogatories, and ad-
    missions on file, together with the affidavits, if any, show that there is no genuine issue as to any material
24  fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Should
    the Court wish to convert this motion into a Rule 56 motion, Plaintiff respectfully requests time to conduct
25  discovery and present evidence that any reasonable consumer would be deceived if he paid for and was
    promised (but did not receive) a certain car on a certain date. Moreover, Plaintiff will prove that reason-
26  able consumers would be deceived by Defendants' representations that their rental cars are "discount,"
    "low price," "great deals," "value-conscious," "last minute deals," "weekend deals," and "cheap," only to
27  arrive to find out that their pre-paid reservations are not "booked" or "locked in" and that they must pay
    last-minute, exorbitant rental rates. (FAC ¶¶ 17,18.)
28

leading statements, (2) cannot establish that he lost money or property as a result of unfair competition or false advertising by Alamo and (3) is not entitled to restitution or injunctive relief from Alamo.   Alamo's arguments similarly miss their mark.

To begin with, Alamo too seems to have overlooked most of the allegations in Plaintiff's FAC.  For example, Alamo entirely ignores Plaintiff's definition of "Defendants," in paragraph 6 of his FAC, as both "Priceline" and "Alamo."  (FAC ¶ 6.)  Each of the above allegations are, accordingly, identically aimed at Alamo.  This is only logical because the relationship between the two entities is alleged to be "a joint venture, partnership and common enterprise."  (Id. ¶ 8.)  It is also alleged that Priceline was at all times acting as Alamo's agent in soliciting the reservation (id. ¶ 7), that it contributed to and ratified Priceline's acts and omissions.  (Id. ¶¶ 9-10.)  Finally, it alleges that "[p]ursuant to the booking services provided by Priceline, and the contractual arrangements between Alamo and Priceline, Alamo is to provide to the rental car services in exchange for the payment collected by Priceline prepaid reservations.  Alamo authorizes Priceline to use Alamo's trademarked logo in advertising rental car reservations and to include the following language on the Priceline website:  '**Alamo and priceline:** Priceline offers great deals to all Alamo locations. Alamo has teamed-up with priceline.com to provide the lowest rates for the most Alamo customers.'"  (Id. ¶ 18.)  In light of these detailed allegations, Alamo's (frequently repeated) argument that Plaintiff failed to allege that it engaged in any untrue, false, deceptive and/or misleading statements or any untrue, false, deceptive and/or misleading business practices is false.

Alamo's two other arguments fare no better.  In paragraphs 45 and 56 of the FAC, Plaintiff alleged that he and the other members of the Class "have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition" and "false, deceptive and misleading advertising."  (FAC ¶¶ 45, 56.)  More specifically, Plaintiff alleges that he suffered injury in fact and lost the $75.51 prepaid charge for the car he never received, $100.46 for Wyndham hotel, and the cost of the bus and shuttle back from Santa Fe to Albuquerque.  (Id. ¶¶ 19, 22, 23.)  At the very least, Plaintiff will be able to get restitution of the $75.51 paid to Priceline, which took the money from

him as Alamo's agent, and which undoubtedly was required to forward some or all of that money to Alamo. Plaintiff's allegations undeniably establish a loss of money and support Plaintiff's prayer for restitution under the UCL and FAL. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1149 (2003) ("object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest"); *Cortez v. Purolator Air Filtration Products*, 23 Cal.4th 163, 177-178 & n.10 (2000) ("restitutionary awards" are for "money that once had been in the possession of the person to whom it [is] to be restored….The restitutionary remedies of sections 17203 and 17535 … are identical and are construed in the same manner."); *Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 338-389 (1998) ("section [17203] itself provides for the 'restoration' of money or property acquired by means of unfair competition. We think it significant that the Legislature chose to use the word 'restore' in labeling that which an offending defendant may be ordered to do. The verb, as defined by the Oxford English Dictionary, means '[t]o give back, to make return or restitution of (anything previously taken away or lost).' Taken in the context of the statutory scheme, the definition suggests that section 17203 operates only to return to a person those measurable amounts which are wrongfully taken by means of an unfair business practice."); *People ex rel. Kennedy v. Beaumont Investment, Ltd.*, 111 Cal.App.4th 102, 135 (2003) ("statutory restitution is 'intended to benefit the [victims] by the return of money"). They are equally sufficient bases for Plaintiff's prayer for injunctive relief. *See id.*

Alamo finally argues that Plaintiff fails to allege that he relied on any false or misleading statement from Alamo, and that reliance is required for standing. This argument fails for the same reason as the identical argument by Priceline: that reliance is not required, and that even if it were, it is pled elsewhere in the Complaint and if necessary can easily be added to the UCL claim.

### b.    Plaintiff Adequately Pleads Claims Under the CLRA Against All Defendants

The Consumer Legal Remedies Act ("CLRA"), set forth in California Civil Code § 1750 *et seq.*, proscribes certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of

goods or services to any consumer." Plaintiff alleges that Defendants violated four enumerated subsections of the CLRA by engaging in (1) "improper representations that the goods or services that they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have" (Cal. Civ. Code § 1770(a)(5); (2) "improper representations that the goods or services that they sell are of a particular standard, quality, or grade, or that goods are of a particular style or model, when they were not" (Cal. Civ. Code § 1770(a)(7); (3) "advertising goods or services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9); (4) "advertising goods or services with intent not to supply reasonably expectable demand, but do not disclose a limitation of quantity." (Cal. Civ. Code § 1770 (a)(10).) The standard for determining whether a representation is misleading under the false advertising law apply equally to claims under the CLRA. *See Consumer Advocates,* 113 Cal.App.4th at 1360. Conduct that is "likely to mislead a reasonable consumer," like the UCL, similarly violates the CLRA. *See Nagel v. Twin Laboratories, Inc.,* 109 Cal.App.4th 39, 54 (2003).

Against his backdrop, Priceline argues that Plaintiff's CLRA claims are deficient because he does not provide adequate support to inform Priceline how it violated subsections 5, 7, 9 and 10 of Civil Code ¶ 1770(a). Alamo once again argues that Plaintiff does not allege that Alamo engaged in the unlawful conduct but rather only Priceline.[5] In making these arguments, Defendants again ignore the most basic allegations of Plaintiff's FAC.

In paragraph 58 of the FAC, for example, Plaintiff repeats and/or incorporates by reference the previously mentioned paragraphs in the FAC. Defendants promised that the reservation would be "booked," the price "locked in" at the "discount," "low price," all of which was untrue. (FAC ¶¶ 47, 49. 50.) From such precise allegations, it is not hard to figure out how Defendants' misrepresentations violate the CLRA, including Cal. Civ. Code § 1770(a)(5), (7), (9) and (10.) Defendants certainly did not disclose that quantities might be limited, or that consumer demand might exceed supply, or that the promised goods might not be delivered, or that instead of supplying the promised economy car, they would (or, even, might) supply a van at a much higher price.

---

[5] Alamo makes the identical argument concerning Plaintiff's breach of contract claim. It too should be rejected for the same reasons—*i.e.*, Plaintiff specifically alleges that he entered into a contract with Alamo. (FAC ¶¶ 70-78.)

1    Alamo, at a minimum, again overlooks Plaintiff's definition of Defendants and the agency

2    and joint venture allegations.  Otherwise put, both of Defendants' arguments fail for the same rea-

3    son(s) that their arguments concerning the UCL and FAL fail.   Finally, it should not be forgotten

4    that California is a notice pleading state, all that is required "is fairness in pleading in order to

5    give the Defendant sufficient notice of the cause of action stated against him so that he will be

6    able to prepare his case…." *People ex rel. Dep't of Transp. v. Superior Court*, 5 Cal. App. 4th

7    1480, 1485 (1992)  (citations and internal quotations omitted); *see also Vess v. Ciba-Geigy Corp.*

8    *USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (pleading must be "specific enough to give defendants

9    notice of the particular misconduct . . . so that they can defend against the charge and not just

10   deny that they have done anything wrong.")  The first amended complaint far exceeds this mini-

11   mal requirement.

12              **c.    Plaintiff Pleads Fraud With The Requisite Specificity**

13   Plaintiff alleges, as to both Alamo and Priceline, fraud, deceit and/or misrepresentation.

14   A plaintiff alleging fraud must satisfy a heightened pleading standard that requires circumstances

15   constituting fraud be pled with particularity.  *See* Fed. R. Civ. P. 9(b).  Specifically, "[t]he plead-

16   ings must state precisely the time, place, and nature of the misleading statements, misrepresenta-

17   tions, and specific acts of fraud." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994), cert.

18   denied, 516 U.S. 810 (1995).  In addition, plaintiffs seeking to satisfy Rule 9(b) must "set forth an

19   explanation as to why the statement or omission complained of was false and misleading." *In re*

20   *GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc); *see  also Fecht v. Price*

21   *Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995), cert. denied, 517 U.S. 1136 (1996).  The pleading must

22   be "specific enough to give defendants notice of the particular misconduct . . . so that they can

23   defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d

24   at 1106 (9th Cir. 2003).

25   Defendants argue that Plaintiff fails to meet this heightened pleading standard.  But a re-

26   view of Plaintiff's fraud claim reveals that Defendants are entirely incorrect.   For example, Plain-

27   tiff states the following:

28

80.     On or about November 19, 2007, and on numerous occasions since and prior to that occasion, Defendants made, and continue to make, fraudulent, misrepresentative, false and/or deceptive statements regarding their travel related services.  Specifically, Defendants stated and continue to state that its rates on rental cars are "discount," "low price," "great deals," "value-conscious," "last minute deals," "weekend deals" and "cheap." Defendants also stated that for its "name your own price" rental car reservations, "If your offer is accepted, we will immediately lock in your reservation and charge your credit card." In fact, Defendants do not provide customers with the marketed and advertised discount rates, deals, etc. but rather force customers to pay inflated, last-minute prices for rental cars that they previously reserved and paid for., Defendants also do not "lock in" the reservation but rather charge customers' credit cards even when the reserved car is not available and is not provided.  At the time of making these statements, Defendants have known them to be false or have recklessly disregarded their veracity.

81.     Moreover, Defendants employ fraudulent, misrepresentative, false and/or deceptive practices to force customers to pay for rental cars that are not provided at the agreed to price or quality.  Among other things, after refusing to fulfill the terms of their contracts, Defendants then dispute credit card chargebacks by falsely claiming that Class Members were "no-shows."  Accordingly, Defendants employ fraudulent, misrepresentative, false and/or deceptive practices to force customers to pay additional amounts for renting cars at inflated, last-minute rates or accept inferior rental cars at inflated prices or abandon their pre-paid reservations.

(FAC ¶¶ 49. 50.)   The above-allegations easily fulfill each pleading requirement with specificity.

Defendants still argue that Plaintiff did (and can) not allege reliance.  This too is untrue. Plaintiff states the following:

82.     These aforementioned fraudulent, deceptive, and/or false statements and omissions concerned material facts that were essential to the analysis undertaken by Plaintiff and those similarly situated as to whether to pay Defendants for rental car reservations.

83.     Plaintiff and those similarly situated would have acted differently had he, and they, not been misled, but instead been informed that (1) their reservations would not properly be transmitted to Defendants' rental car partners, (2) they would not receive the rental car that they reserved and paid for, (3) they would incur additional expenses, (4) they would not receive a refund and (5) they would receive inferior rental cars at either the same or inflated prices.

84.     Defendants had a fiduciary duty to inform Plaintiff and those similarly situated that (1) their reservations would not properly be transmitted to Defendants' rental car partners, (2) they would not receive the rental car that they reserved and paid for, (3) they would incur additional expenses, (4) they would not receive a refund and (5) they would receive inferior rental cars at either the same or inflated prices.

85.     In not informing Plaintiff, and those similarly situated, Defendants breached this duty.  Defendants also gained financially from, and as a result of, their breach.

1    86.    By and through such fraud, deceit, misrepresentations and/or omissions, Defen-
2    dants intended to induce Plaintiff and those similarly situated to alter their position to their
     detriment.

3    87.    Plaintiff and those similarly situated justifiably and reasonably relied on Defen-
4    dants' misrepresentations, and, accordingly, were damaged by the Defendants.

5    88.    As a direct and proximate result of Defendants' misrepresentations, Plaintiff and
6    those similarly situated have suffered damages in an amount equal to the amount that
     Defendants billed them, the inflated price they paid for inferior rental cars and the
7    additional expenses that they incurred.

8    (FAC ¶¶ 81-88.)   The above is sufficient to specifically plead a cause of action, including the

9    elements of reliance and causation.

10   Finally, Priceline argues that Plaintiff's fraud claim is barred by the "economic loss rule."

11   Economic loss consists of "'damages for inadequate value, costs of repair and replacement of the

12   defective product or consequent loss of profits—without any claim of personal injury or damages

13   to other property.…'" *Jimenez v. Superior Court*, 29 Cal.4th 473, 482 (2002).  Priceline is thor-

14   oughly confused about the "economic loss" rule, which governs only contract damages, not dam-

15   ages for tort such as fraud, and in any event does not provide a basis to dismiss the fraud claim.

16   Although one of the claims here is for breach of contract, there is an additional claim for

17   fraud—supported by additional facts about Defendants' intent and Plaintiff's detrimental reli-

18   ance—for which tort damages are available.  *See Harris v. Atlantic Richfield Co*., 14 Cal.App.4th

19   70, 78 (1993) ("when one party commits a fraud during the contract formation or performance,

20   the injured party may recover in contract and tort"].)  As the California Supreme Court has ex-

21   plained, "Outside the insurance context, 'a tortious breach of contract … may be found when (1)

22   the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the

23   means used to breach the contract are tortious, involving deceit or undue coercion; or, (3) one

24   party intentionally breaches the contract intending or knowing that such a breach will cause se-

25   vere, unmitigable harm in the form of mental anguish, personal hardship, or substantial conse-

26   quential damages.' Focusing on intentional conduct gives substance to the proposition that a

27   breach of contract is tortious only when some independent duty arising from tort law is violated."

28   *Erlich v. Menezes*, 21 Cal.4th at 543, 553–554 (1999) (citation omitted); *see also Lazar v. Supe-*

*rior Court*, 12 Cal. 4th 631, 645-46 (1996) (a plaintiff fraudulently induced to enter into a con-

tract has the power to elect to affirm the contract and sue for damages resulting from the fraud

and that such a plaintiff is entitled to benefit of the bargain damages supplemented by non-

duplicative tort damages resulting from the fraud); *Walker v. Signal Cos*., 84 Cal. App. 3d 982,

996 (1978); *Reynolds v. Allstate Life Ins. Co*., 2006 U.S. Dist. LEXIS 14548, at *16 (E.D. Cal.

2006); Cal. Civ. Code § 3294(a) ("where it is proven by clear and convincing evidence that the

defendant has been guilty of . . . fraud . . . the plaintiff . . . may recover damages for the sake of

example and by way of punishing the defendant.")

Finally, regardless of the damages that can be recovered on the fraud claim, nothing in the

"economic loss" rule would justify dismissing the fraud claim; at best it would limit the damages

that might be recovered after trial.

### d.    California Law Applies To This Case.

Alamo finally argues that Plaintiff seeks to apply California law to its conduct, which oc-

curred in New Mexico, which would constitute an impermissible extraterritorial application of

California law.  Alamo is mistaken as a matter of law and fact.

To begin with, Plaintiff resides in Berkeley, California.  (FAC ¶ 2.)  Plaintiff booked the

reservation from his home computer.  (Id. ¶ 14.)  Alamo also transacts substantial business in

California.  (Id. ¶¶ 12, 13.)   Alamo employed Priceline as its agent to solicit Plaintiff's reserva-

tion.  (Id. ¶¶ 6-10, 18.)  It is well-settled that California's consumer protection laws apply to

non-California residents as long as the wrongful conduct injures a California resident.  *See, e.g.,*

*Yu v. Signet Bank*, 69 Cal.App.4th 1377, 1391 (1999) (stating that "a defendant who . . . engages

in out-of-state conduct that injures a California resident may be held liable for such conduct in a

California court.")  Here, the facts are even stronger, Plaintiff is a California resident and Defen-

dants transact substantial business in California, including the internet car rental reservation that

is at the heart of this litigation.[6]

---

[6] Even under the "comparative interest test," as between California and New Mexico law, California law would still apply.  *See Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 918-919 (2001).  The comparative interest test dictates that California courts apply California law unless the proponent of for- eign law: (1) identifies another law to be applied; and (2) satisfies the burden of demonstrating that some other state's laws should apply.  *Id*. at 919.  Alamo has not satisfied that burden.  Moreover, not only must

**B.    Defendants' Motions To Strike**

Rule 12(f) authorizes the court to order stricken from any pleading "any redundant, imma-terial, impertinent, or scandalous matter."  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." 5 Wright & Miller, Federal Practice and Procedure § 1382, at 706-707.

Motions to strike portions of a complaint are generally viewed with disfavor, and will usually be denied unless the allegations in the complaint have no possible relation to the contro-versy, and may cause prejudice to one of the parties. *See* 5 Wright & Miller, Federal Practice and Procedure § 1380; *see also Hanna v. Lane*, 610 F. Supp. 32, 34 (N.D. Ill. 1985).  If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits.  *See* 5 Wright & Miller at § 1380.

Alamo asks this Court to strike from Plaintiff's complaint all class allegations against Alamo.  Priceline similarly requests that Plaintiff's claims for consequential, incidental and puni-tive damages be stricken because Priceline's terms and conditions expressly disclaim liability for such damages.  Both Defendants' requests should be rejected.

Alamo claims that Plaintiff is not a proper representative of the class because Alamo did not cause his injury.  This argument has (above) been repeatedly refuted.  In particular, Alamo caused the injury by not providing the car that for which Plaintiff had paid $75.51 to Priceline in its capacity as Alamo's agent and joint venturer.  Whether or not Plaintiff's claims are typical of the class is a question that cannot be determined at this stage.  That question should be left to Plaintiff's motion for class certification.  *See Baas v. Dollar Tree Stores, Inc.*, 2007 U.S. Dist. LEXIS 65979, *7-8 (N.D. Cal. 2007) (denying motion to strike regarding the propriety of the class allegations as "premature" at the "procedural stage") *citing In re Wal-Mart Stores, Inc.*, 2007 WL 1557935, * 4 (N.D. Cal. May 29, 2007)  (courts generally "review class allegations through a motion for class certification."); *see also Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d

there be conflicts, but the laws must be "materially different."  *Id.*  Alamo presents nothing on this ques-tion.

1   1120, 1125 (N.D. Cal. 2008). ("Motions to strike class allegations are disfavored because a mo-

2   tion for class certification is a more appropriate vehicle for the arguments Abbott advances

3   herein.")  At this stage, Plaintiff's allegations regarding typicality are sufficient.  (FAC ¶ 33.)

4          Priceline's argument regarding the limitation of liability provision in its Terms and Condi-

5   tions agreement is factually unsupported, and legally invalid.  Priceline appends to the Whelan

6   Declaration a Terms and Conditions agreement from July 9, 2008, well after the date of Plaintiff's

7   transaction in November 2007.  (Whelan Decl. ¶ 2  ("On July 9, 2008, I visited the Priceline web-

8   site and printed out the attached Terms and Conditions.")  Priceline makes no showing that the

9   Terms and Conditions were the same at the time of Plaintiff's transaction or that Plaintiff took

10  any action to agree to them.  The Terms and Conditions agreement is not attached to, or referred

11  to in, the first amended complaint.  Priceline does not seek judicial notice of the Terms and Con-

12  ditions, nor could judicial notice be granted, because Plaintiff disputes that these Terms and

13  Conditions were shown to him at the time of his reservation. *See* Fed. R. Evid. 201 (b) (judicial

14  notice available only for facts not subject to reasonable dispute).  On a Rule 12 motion the Court

15  may only consider "the facts alleged in the complaint, documents attached to the complaint, docu-

16  ments relied upon but not attached to the complaint when authenticity is not contested, and mat-

17  ters of which the court takes judicial notice." *Parrino v. FHP, Inc*., 146 F.3d 699, 705-706 (9th

18  Cir.1988).

19         Even were the Terms and Conditions admissible, the argument would fail for two reasons.

20  First, at least with respect to the CLRA and fraud claims, Plaintiff's right to consequential, inci-

21  dental and statutory damages was not waivable by contract.   The CLRA provides for punitive,

22  statutory and consequential damages, none of which are waivable. *See* Cal. Civ. Code § 1751

23  ("[a]ny waiver by a consumer of the provisions of this title is contrary to public policy and shall

24  be unenforceable and void.")  Likewise, the common law of fraud provides for punitive and con-

25  sequential damages, which are not waivable. *See, e.g.,* Civil Code § 1668 (contractual attempts to

26  exempt a party from liability for its own fraud or intentional wrongdoing are against public pol-

27  icy); *see also Armendariz v. Foundation Health Psychcare*, 24 Cal.4th 83, 100 (2000) (such "con-

28  tractual releases of future liability for fraud and other intentional wrongs are invariably

invalidated.") *citing Farnham v. Superior Court* (1997) 60 Cal.App.4th 69, 71 (1997); *McQueen v. Tyler*, 61 Cal.App.2d 263, 267 (1943)  (an exception to the general rule deeming a party to as-sent to the limitations of liability in a contract, even when the party does not read the contract, is where consent to the agreement "was obtained through fraud or mistake and therefore not real and free.")

Second, the limitation of liability provision is unenforceable because it is procedurally and substantively unconscionable. *See, e.g.*, Cal. Civ. Code § 1670.5 (a court may refuse to enforce a contract clause that is unconscionable); *see also Tunkl v. Regents of University of California*, 60 Cal.2d 92, 98-101 (1963); *H. S. Perlin Co. v. Morse Signal Devices*, 209 Cal.App.3d 1289, 1300-1301 (1989).  To determine unconscionability, courts look to whether the allocation of the bur-dens and benefits are so one-sided as to shock the conscience or whether there is an "absence of meaningful choice on the part of one of the parties together with contract terms which are unrea-sonably favorable to the other party." *Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.*, 200 Cal. App. 3d 1518, 1534 (1988).  A determination of unconscionability is a mixed question of law and fact for the court.  *See U.S. Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal.App.3d 143 (1991).  And, it is well-established that "[i]f the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assess-ment of the sufficiency of the allegations for adjudication on the merits." *Doe v. Regents of the Univ. of Cal.*, 2006 U.S. Dist. LEXIS 65035, *9-10 (E.D. Cal. 2006).

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court DENY Defen-dants' motions to dismiss and/or strike.

Dated:  July 25, 2008                    **GUTRIDE SAFIER LLP**

                                                        Adam J. Gutride, Esq.
                                                        Seth A. Safier, Esq.
                                                        835 Douglass Street
                                                        San Francisco, California 94114

                                                        Attorneys for Plaintiff

**PROOF OF SERVICE**

I, Seth A. Safier, declare:

My business address is 835 Douglass Street, San Francisco, California.  I am employed in the County of San Francisco, where this mailing occurs.  I am over the age of 18 years and not a party to the within cause.

On July 25, 2008, I served the following documents:

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND MOTIONS TO STRIKE ALLEGATIONS IN PLAINTIFF'S FIRST AMENDED COMPLAINT**

on the following person(s) in this action by placing a true copy thereof as follows:

FOLGER LEVIN & KAHN LLP
Gregory D. Call (gcall@flk.com)
Jiyun Cameron Lee (jlee@flk.com)
Trina D. McAlister (tmcalister@flk.com)
Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, CA  94111

SEDGWICK, DETERT, MORAN & ARNOLD LLP
Jacqueline Jauregui (jacque-line.jauregui@sdma.com)
Marina L. Whelan (marina.whelan@sdma.com)
801 South Figueroa Street, 19th Floor
Los Angeles, CA 90017

[x]      BY ELECTRONIC MAIL.  I caused said documents to be transmitted by electronic mail to the email address indicated after the address(es) via ECF.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this document was executed on July 25, 2008, at San Francisco, California.

_____
Seth A. Safier, Esq.